# EXHIBIT A

## IN THE MATTER OF AN EMERGENCY ARBITRATION UNDER THE CPR NON-ADMINISTERED ARBITRATION RULES

DENTONS US LLP,

CLAIMANT,

v.

JINSHU "JOHN" ZHANG,

RESPONDENT

## CORRECTED[1] AWARD GRANTING EMERGENCY MEASURE SOUGHT IN CLAIMANT'S APPLICATION FOR EMERGENCY RELIEF DATED MAY 25, 2021

**Introduction and Summary of Proceedings**

1. I was appointed by the International Institute for Conflict Prevention ("CPR") as Emergency Arbitrator (the "EA") on or about May 18, 2021 to act in regard to an application of emergency measures under Rule 14 of the 2018 CPR Non-Administered Rules made by Claimant Dentons US LLP against Respondent Jinshu "John" Zhang. On May 19, I received from Claimant's counsel the underlying Demand for Arbitration, and the Emergency Measures Application supported by three witness statements and a series of documentary exhibits.

2. On May 21, having already been notified by Respondent via counsel that he objected to jurisdiction of the EA, the EA was notified via email from the parties' counsel of Respondent's contemplated imminent filing of a proceeding in a California non-arbitral forum. Based on an

---

[1] The corrections to paragraphs 1-3 of the *Dispositif* that follows paragraph 27 are errors of a nature similar to clerical errors and are made pursuant to the written request for corrections lodged by Claimant on May 26, 2021. The EA construes the CPR Non-Administered Rules to make Rule 15.5 as applicable to an Emergency Arbitrator award as to other awards. The corrections in paragraph 1, in Footnote 11 at paragraph 15, and the figure for EA fees awarded are Tribunal-initiated corrections which the EA "deem[s] appropriate." (Rule 15.5). The EA fee sum was calculated but not yet fixed by the CPR at the time of issuance of the Award. In addition there is good cause for each of these award modifications under CPR Rule 14.13.

application by Claimant for a further emergency measure related to the confidentiality of that proposed proceeding, on May 21 the EA entered an order granting an emergency measure providing that in any motion that a court might require from Respondent for leave to file the pleading under seal, Respondent would make reference to the confidentiality obligations imposed by the partnership agreement between the parties.

3.  By way of general factual background: Respondent joined Claimant as an equity partner in 2014 and remained in that status until his departure from Claimant on May 5, 2021. Respondent's status as a partner of Claimant is the status recited in the partnership agreement, and is recited here based on the partnership agreement without prejudice to Respondent's right to contend, in any forum, that under governing law he was an employee not a partner. The parties had a dispute over Respondent's compensation, arising from a particular engagement in which a client of Claimant introduced to the firm by Respondent brought proceedings in the US District Court for the Southern District of New York to recognize and enforce a foreign arbitral award made in China in an arbitration under the Rules of the China International Economic and Trade Arbitration Commission ("CIETAC"). Claimant's fee arrangement with the client for this engagement involved contingent compensation, and when a settlement was reached resolving the enforcement case, realization of the contingent compensation by Claimant and the impact of the potential realization on Respondent's compensation became issues that created disputes and tensions, and ultimately led Claimant to dismiss Respondent on May 5, 2021.

4. On May 24, in advance of an oral hearing scheduled for May 24 to discuss Respondent's objection to arbitral jurisdiction, the EA was informed by the parties that Respondent had commenced an action in California Superior Court, Los Angeles County ("LA Superior Court"), by electronic filing of a Complaint, on Sunday May 23. No contention has been raised in the arbitration that the filing violated the Respondent's representations to Claimant concerning filing under seal or the EA's May 21 Order concerning reference to the confidentiality obligations of the partnership agreement in the motion for leave to file under seal. The parties are in agreement that the electronic docket of the LA Superior Court is a publicly-accessible docket, and that there is an entry in the docket reflecting the case caption with names of the parties and the date and nature of the filing, but that there is presently no public access to the pleading itself.

5.  In the hour prior to the May 24 oral hearing, Respondent provided a copy of the pleading to Claimant and the EA. The pleading is identified as Appendix A to this Award so that in any judicial proceeding to enforce or vacate this Award there will be ease of reference for the adjudicator. Any party filing the Award in a court for such purpose shall do so respecting the relevant confidentiality provisions of the partnership agreement.

6.  The LA Superior Court Complaint contains allegations that broadly and in multiple ways accuse Claimant and its managing partners, including two who are specifically named as defendants, of incompetence, poor judgment, lack of integrity, dishonesty, fraud, and bias and discrimination on the basis of ethnicity with respect to Respondent and other personnel of Claimant. The capacity of such allegations to irreparably harm the reputation of the Claimant if they were publicized is in the EA's judgment patent on the face of the pleading, and that is the singular finding of fact that underlies this Emergency Measures Award and the Order of May 25 that preceded it (discussed below).

7.  In the May 24 oral hearing, in consideration of the setting of a timetable for further submissions by both parties, the parties made an agreement ("Standstill Agreement") that no further action would be taken by Claimant to prosecute the LA Superior Court action during the Emergency Arbitration save for the efforts to obtain leave of the Court for filing of the Complaint to be under seal. The Standstill Agreement was by implication adopted as a Procedural Order of the Emergency Arbitration, because it formed the foundation for the procedural timetable that was adopted.

8. In the May 24 oral hearing, Claimant reserved the right to seek additional emergency measures on May 25 concerning confidentiality of the LA Superior Court proceeding, if necessary after negotiations with Respondent, and a hearing on May 25 to hear such application, if made, was scheduled.  The Application was indeed made, and it included as a proposed emergency measure the self-initiated dismissal without prejudice by Respondent of the LA Superior Court action. The existence of the Standstill Agreement was reaffirmed in the May 25 oral hearing. At the conclusion of the oral hearing on May 25, the EA entered an Order recited into the stenographic record

directing Respondent to cause the withdrawal without prejudice of the LA Superior Court action and to take all possible steps to effect the expungement of the docket entry of the filing, and to report on compliance to the EA within 24 hours. The EA also stated that he intended to make an Award the following day providing this same relief, and granted Respondent until midnight Pacific Time to submit further submissions as to why the Award should not be made and why the Order should be vacated or modified.

9.  Rather than make the invited submissions, Respondent's counsel notified the EA in an email time stamped 11:59 p.m. Pacific Time on May 25, that Respondent was "withdrawing" from the arbitration and intended to apply to a court to stay the arbitration. The declaration of an intention to seek a stay from a court may or may not imply an intention to violate the May 25 Order and the Standstill Agreement. This depends on whether the relief is sought within the LA Superior Court action. It was not the intention of the May 25 Order, and is not the intention of this Award, to prevent the filing of a judicial application for a stay of this arbitration in a proceeding separate from the LA Superior Court action.

**Emergency Arbitrator Jurisdiction Prima Facie**

10.  The Respondent's objection to Emergency Arbitrator jurisdiction needs to be addressed here. I address jurisdiction "prima facie", as in common in Emergency Arbitration, because the issue has not been fully briefed, Respondent has withdrawn rather than brief it according to the schedule that was made. But this is intended to be the final word on Emergency Arbitrator jurisdiction for purposes of the Emergency Measures application of May 25 seeking *inter alia* the dismissal without prejudice of the LA Superior Court action. There should be no doubt that this Award in intended in all respects including as to EA jurisdiction to have sufficient finality to be subject to confirmation or vacatur under the Federal Arbitration Act.

11. Respondent did survey his grounds for objecting to jurisdiction in the oral hearing on May 24, but then withdrew from participation in the arbitration in advance of the date fixed to receive Respondent's brief on the issue. Initially it is to be noted that by email on May 21, Respondent told the EA that the basis of its objection was that the law of California rendered the arbitration

4

clause unenforceable against Mr. Zhang . Requested by the EA to state by email what statute or judicial decision of California had this effect, Respondent did not reply.

12. In the same email to the Respondent's counsel in which the EA asked for citation of the relevant California law, the EA invited consideration of the FAA pre-emptive effect, if any, of decisions of the Supreme Court of the United States, such as *Volt v Stanford University Board of Trustees*[2], *AT&T Mobility v Concepcion*[3], *Preston v Ferrer*[4], and *DirecTV v. Imburgia*[5]. Respondent did not address these cases in writing, or meaningfully in the ensuing proceedings. In the oral hearing on May 24, it became evident that the California law Respondent relies upon is two-fold: first, that California contract law should apply to determine whether the parties entered into an agreement to arbitrate in the first place, and second, that California law should apply to determine whether the arbitration agreement is unconscionable. However the parties subjected the partnership agreement to the law of Delaware. The displacement of this choice of law by California law depends on finding the entire partnership agreement, or at least the choice of law clause, not just the arbitration clause, to be unconscionable. Then, if the contractual choice of law were displaced, there could be a contacts-based analysis of choice of law in which Mr. Zhang's California residence and California business activity would be relevant. Whether any provision of the partnership agreement other than the arbitration clause is unconscionable is an issue for an arbitrator not a court to decide and cannot properly be invoked as a basis to assign the determination of arbitral jurisdiction to a court rather than an arbitrator. It was so held in *Rent-a-Center v. Jackson*[6], a case cited and relied upon by Respondent.

13. Respondent argued in the May 24 oral hearing that various references to judicial proceedings in the partnership agreement should result under applicable state law contract principles in the conclusion that the parties never entered into an arbitration agreement and therefore never validly delegated to any arbitrator the issue of the validity of the arbitration agreement (which expressly identifies "validity" as an arbitrable issue). As a matter of contract interpretation, under Delaware

---

[2] 489 U.S. 468 (1989).
[3] 563 U.S. 333 (2011).
[4] 552 U.S. 346 (2008).
[5] 577 U.S. __, 137 S.Ct. 463 (2015).
[6] 561 U.S. 63 (2010).

law principles, I find no such ambiguity in the partnership agreement, as the references to judicial proceedings and to arbitration are not irreconcilable but instead are fully consistent with one another. This conclusion makes it unnecessary to decide whether FAA pre-emption would apply if applicable state contract law were held to negate consent to arbitrate whenever a contact containing an arbitration clause also made reference to judicial proceedings. *See DirecTV v. Imburgia*[7]; *Kindred Nursing Centers v. Clark*[8].

14.   The foregoing analysis appears fully to answer the question of whether the arbitration clause in tandem with CPR Non-Administered Rules 8.1 and 14.9 clearly and unmistakably delegate the determination of arbitrability to the arbitrator. They do. Under the FAA as construed by the Second and Ninth federal judicial circuits (among others) the agreement to arbitrate under rules that empower the arbitrator to rule on his/her own jurisdiction constitute the clear and unmistakable evidence required under *First Options v Kaplan*[9] that the parties have made arbitrability an arbitrable issue.[10]

15. Respondent also argued on May 24 that no meeting of the minds about Emergency Arbitrator jurisdiction occurred because when Mr. Zhang first signed the partnership agreement in 2014 the CPR Non-Administered Rules did not provide for emergency arbitration[11]. But this is unpersuasive for two reasons. First, in 2014 the arbitration clause provided that arbitration would be governed by the CPR Non-Administered Rules as in effect at the time of the dispute. So the parties agreed to be bound by subsequent Rules amendments. Second, the partnership agreement was renewed and re-signed by the parties in 2021, a fact noted by Claimant's counsel in the May 24 oral hearing and not disputed by Respondent.

---

[7] *supra*, n. 4
[8] 137 S.Ct. 1421 (2017).
[9] 514 U.S. 938 (1995).
[10] *E.g.*, *Contec v. Remote Solution Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (2013).
[11] As a Tribunal-initiated correction under Rule CPR 15.5, it is noted that this was the implication of what was stated by Respondent's counsel and there was not a direct statement that there was no emergency arbitration rule in 2014. In fact the CPR Non-Administered Rules 2007, in effect as of 2014, included Rule 14 entitled Interim Measures of Protection By a Special Arbitrator that was in material respects similar to and was the forerunner of the Rule 14 in the 2018 Rules.

16.   Respondent devoted considerable attention in the May 24 oral hearing to the putative unconscionability of the arbitration clause under California law. For the reasons stated, the law governing the contract including its arbitration clause is here held to be Delaware law. But that is not determinative. Respondent advanced little evidence that separate and distinct considerations of procedural and substantive unfairness infect the agreement to arbitrate as distinguished from the partnership agreement itself. The thrust of Respondent's argument was that the partnership agreement was presented on a "take it or leave it basis" and therefore was unconscionable. Such entire-contract putative unconscionability is a merits issue for the Tribunal in this arbitration, not an arbitrability issue. *Rent-a-Center*, *supra*. The item of evidence specific to the arbitration clause that Respondent noted was the jury trial waiver. But an agreement to arbitrate disputes operates as a waiver of the right to jury trial on those disputes whether or not an explicit jury trial waiver is included. The argument is tantamount to arguing that Section 2 of the FAA has no legal effect. Therefore I cannot accept it.

17. Respondent contends that the proper reading of FAA case law about the allocation of power between courts and arbitrators, concerning arbitral jurisdiction, is that if the delegation of power to rule on arbitral jurisdiction to the arbitrator is not "clear and unmistakable", the arbitrator should not rule on an objection to jurisdiction that has been presented in a pending arbitration but should wait for a court to decide if a court has been invited to decide. My provisional view is that this is not correct, and that if an objection to jurisdiction is presented in an arbitration, as it has been here, and the rules governing the arbitration empower the arbitrator to rule on jurisdiction, as CPR Non-Administered Rule 14.8 in tandem with Rule 8.1 does, then the arbitrator should rule, and the question of whether the determination of arbitrability was clearly and unmistakably delegated to the arbitrator affects only the scope of judicial review of the arbitrator's arbitrability determination. In the May 24 oral hearing, Respondent cited *Rent-a-Center v. Jackson* in support of his argument that I should refrain from a decision and allow the LA Superior Court to decide the "who decides" issue. I have re-read *Rent-a-Center*, and do not find it clearly to support the position Respondent advocates.

**Necessity and Urgency**

7

18.  The standard of necessity of the emergency measures imposed is a stringent one. The AAA Commercial Rule on emergency relief does not adopt this standard (Rule 38(e)). Neither does the JAMS Comprehensive Rules counterpart of CPR Rule 14.9 (Rule 2(c)(iv)). Those rules adopt a more conventional preliminary injunction formula, and I construe the standard of what is "necessary" therefore to be a demanding one. Here the finding of necessity cannot be based on a confident prediction of what will happen if the measure is not granted. It is in the nature of the matter (legal journalism) that we must deal with what could happen, and the virtual certainty that there will be no later time when Claimant would receive notice of the imminent public disclosure of facts about the LA Superior Court action through the news media and be able to do anything to prevent publication. Just as remote is prospect that Claimant could obtain an interim measure against a news organization.  So the question of necessity turns on what constitutes the last clear opportunity to effectively and lawfully secure, on an interim basis, the rights to confidential arbitral dispute resolution contained in the partnership agreement, assuming provisionally that those are enforceable rights between the parties. I cannot think of a more effective and appropriate deterrent, in the circumstances, than the withdrawal of the LA Superior Court action, to a legal journalist's pursuit of a publication-worthy story about the disputes between Mr. Zhang and Dentons, than to learn from the Court's docket that the lawsuit filed on a Sunday was withdrawn a few days later.

19. I have considered Respondent's contention that I lack power to make this Award. I disagree. CPR Non-Administered Rule 14.9 gives an Emergency Arbitrator power to "grant such emergency measures as he or she deems necessary..."  Insofar as this contention of Respondent is grounded in the position that Claimant has not asked for the relief here granted, Claimant's May 25 application clearly does seek this relief. When Claimant focused in the May 25 oral hearing on the alternative of more specific undertakings by Respondent in regard to the standstill period, it was not understood to be withdrawing the branch of the application that asked for a measure requiring self-initiated dismissal of the Complaint without prejudice by Mr. Zhang. In all events Rule 14.9 does not confine the Emergency Arbitrator to measures requested by the applicant.

**Balance of Hardships**

20. I have considered Respondent's contention that the emergency relief awarded herein is a "prior restraint" violating Mr. Zhang's alleged First Amendment "right of petition." I do not agree. First, if the enforcement of an agreement to arbitrate disputes under the mandate of FAA Section 2 violated the First Amendment by depriving a party to the agreement of a judicial forum for those disputes, the FAA would have long ago been struck down as unconstitutional. But instead the FAA is still standing after 96 years. This suggests to me that there is no constitutional right to a judicial forum for the resolution of disputes, embedded in the First Amendment, that cannot be limited by an enforceable agreement for arbitration of the same categories of disputes, at least when such enforcement is mandated by an Act of Congress in the valid exercise of its powers to regulate interstate commerce. Second, this award merely regulates the timing of Mr. Zhang's right to bring a lawsuit, postponing the potential refiling of that action by only about two weeks if I ultimately accept Mr. Zhang's position that the arbitration agreement is not enforceable. Third, this Award does not deprive Mr. Zhang of his right of petition even in the two-week window. He already agreed to the Standstill Agreement applying to the LA Superior Court action for that period, in the hearing on May 24, as confirmed in the hearing in May 25, and so the additional measure of requiring the withdrawal of the action without prejudice concerns not the "right of petition", already consensually postponed, but only the right to gamble on the possibility that the mere existence of the case caption in the Court's docket (and ensuing docket entries albeit with the content not accessible) could lead to public disclosures that would injure the Claimant. And neither this Award nor my May 25 Order prevents an application to a court, separate from the LA Superior Court Action, to ask a competent court for a stay of this arbitration.

21.  What Claimant stands to lose if the measure is not granted is substantial reputational goodwill and brand value. What Respondent stands to lose if the measure is granted is the leverage of that reputational risk in the parties' dispute, over the next two weeks. The balance weighs decisively in favor of Claimant.

**Irreparable Injury**

22. Publication in a public setting of the types of allegations contained in the LA Superior Court Complaint is likely to cause irreparable harm to the reputation of Claimant, harm that cannot he

readily measured in money damages but is found in the diminished stature and diminished confidence and respect for the firm that some existing and potential clients of the Claimant firm and its affiliates would likely have.

23. The size of Claimant and its global parent entity and affiliated units factors into the irreparable harm equation. This is not a local law firm but according to the record in this case Claimant is the US entity of a global firm that is the largest in the world measured by number of lawyers (said to be over 12,000). This has several consequences relevant here. One is that journalists on the legal beat in Los Angeles would likely be attracted to treating the matter as newsworthy. Another is that if news coverage were initiated in Los Angeles, it is likely to be spread globally. A third consideration is that Claimant's ability to manage the reputational and brand damage is challenged and complicated by this type of global spread.

24. It seems obvious that such factors - as to the reputation of the firm and any of its partners including those who might leave the firm to pursue their careers elsewhere, voluntarily or otherwise — motivate the firm and its partners to seek in their partnership agreement the benefits in terms of privacy and confidentiality of dispute resolution under the CPR Rules and according to the provisions on confidential information in the partnership agreement. Those benefits should not be irreparably impaired, for either side, while there is a pending dispute over the enforceability of the partnership agreement and its arbitration clause.

**Likelihood of Success on the Merits**

25.  In an Emergency Arbitration the threshold to satisfy the "merits" factor of the provisional relief equation is scaled down because time prevents the ample development of the record.

26.  On the Respondent's primary defenses that the partnership agreement and its arbitration clause are unenforceable, I am satisfied *prima facie* that Claimant has at least raised serious questions that it has a meritorious position on these issues. In this regard it is especially significant that Respondent re-signed the partnership agreement in early 2021 and only attacks it now that he is unaffiliated with Claimant and in a dispute.

27.  On the Claimant's likelihood of success on the underlying claims made by Claimant in the Demand for Arbitration, having examined that demand and the evidence tendered in the form of witness statements and exhibits in support of the initial emergency measures application, I am satisfied that Claimant has a non-frivolous position, and that is all that is required in terms of the merits in an Emergency Arbitration context where time is of the essence.

THEREFORE I AWARD AS FOLLOWS:

1.  Respondent is directed to withdraw without prejudice the LA Superior Court action.

2.  Respondent is directed to take all possible steps to effectuate the expungement of the docket entry or entries of the LA Superior Court action.

3.  Respondent is directed to report in writing to the EA, copying Claimant's counsel, on compliance with this Award by May 27 at 10 a.m. PT.

4.  Claimant is awarded costs of this Emergency Measures application, consisting of the CPR Administrative fee of $1000 and the EA's fees as determined by CPR in the sum of $23,035.

5.  The apportionment of the parties' reasonable attorneys' fees in respect of this Award shall be determined in a supplementary award or order. (CPR Rule 14.11).

Award made at the place of arbitration, New York, New York, this 27th day of May 2021.

*M J*

Marc J. Goldstein, Emergency Arbitrator