# EXHIBIT B

# IN THE MATTER OF AN EMERGENCY ARBITRATION UNDER THE CPR NON-ADMINISTERED ARBITRATION RULES

DENTONS US LLP,

CLAIMANT,

v.

JINSHU "JOHN" ZHANG,

RESPONDENT

## FINAL AWARD ON THE JURISDICTION OF THE EMERGENCY ARBITRATOR

**Introduction and Summary of Proceedings**

1. I was appointed by the International Institute for Conflict Prevention ("CPR") as Emergency Arbitrator (the "EA") on or about May 18, 2021 to act in regard to an application of emergency measures under Rule 14 of the 2018 CPR Non-Administered Rules made by Claimant Dentons US LLP against Respondent Jinshu "John" Zhang. On May 19, I received from Claimant's counsel the underlying Demand for Arbitration, and the Emergency Measures Application supported by three witness statements and a series of documentary exhibits.

2. On May 21, having already been notified by Respondent via counsel that he objected to jurisdiction of the EA, the EA was notified via email from the parties' counsel of Respondent's contemplated imminent filing of a proceeding in a California non-arbitral forum. Based on an application by Claimant for a further emergency measure related to the confidentiality of that proposed proceeding, on May 21 the EA entered an order granting an emergency measure providing that in any motion that a court might require from Respondent for leave to file the pleading under seal, Respondent would make reference to the confidentiality obligations imposed by the partnership agreement between the parties.

3.  By way of general factual background: Respondent joined Claimant as an equity partner in 2014 and remained in that status until his departure from Claimant on May 5, 2021. Respondent's status as a partner of Claimant is the status recited in the partnership agreement, and is recited here based on the partnership agreement without prejudice to Respondent's right to contend, in any forum, that under governing law he was an employee not a partner. The parties had a dispute over Respondent's compensation, arising from a particular engagement in which a client of Claimant introduced to the firm by Respondent brought proceedings in the US District Court for the Southern District of New York to recognize and enforce a foreign arbitral award made in China in an arbitration under the Rules of the China International Economic and Trade Arbitration Commission ("CIETAC"). Claimant's fee arrangement with the client for this engagement involved contingent compensation, and when a settlement was reached resolving the enforcement case, realization of the contingent compensation by Claimant and the impact of the potential realization on Respondent's compensation became issues that created disputes and tensions, and ultimately led Claimant to dismiss Respondent on May 5, 2021.

4. On May 24, in advance of an oral hearing scheduled for May 24 to discuss Respondent's objection to arbitral jurisdiction, the EA was informed by the parties that Respondent had commenced an action in California Superior Court, Los Angeles County ("LA Superior Court"), by electronic filing of a Complaint, on Sunday May 23. No contention has been raised in the arbitration that the filing violated the Respondent's representations to Claimant concerning filing under seal or the EA's May 21 Order concerning reference to the confidentiality obligations of the partnership agreement in the motion for leave to file under seal. The parties are in agreement that the electronic docket of the LA Superior Court is a publicly-accessible docket, and that there is an entry in the docket reflecting the case caption with names of the parties and the date and nature of the filing, but that there is presently no public access to the pleading itself.

5.  In the hour prior to the May 24 oral hearing, Respondent provided a copy of the pleading to Claimant and the EA. The pleading was identified as Appendix A to my May 26, 2021 Emergency Measures Award so that in any judicial proceeding to enforce or vacate that Award there would be ease of reference for the adjudicator. Any party filing this Award in a court for such purpose or

any other purpose, shall do so, as was provided in regard to the May 26 Award, respecting the relevant confidentiality provisions of the partnership agreement.

6. The LA Superior Court Complaint contains allegations that broadly and in multiple ways accuse Claimant and its managing partners, including two who are specifically named as defendants, of incompetence, poor judgment, lack of integrity, dishonesty, fraud, and bias and discrimination on the basis of ethnicity with respect to Respondent and other personnel of Claimant. The capacity of such allegations to irreparably harm the reputation of the Claimant if they were publicized is in the EA's judgment patent on the face of the pleading, and that is the singular finding of fact that underlies this Emergency Measures Award and the Order of May 25 that preceded it (discussed below).

7. In the May 24 oral hearing, in consideration of the setting of a timetable for further submissions by both parties, the parties made an agreement ("Standstill Agreement") that no further action would be taken by Claimant to prosecute the LA Superior Court action during the Emergency Arbitration save for the efforts to obtain leave of the Court for filing of the Complaint to be under seal. The Standstill Agreement was by implication adopted as a Procedural Order of the Emergency Arbitration, because it formed the foundation for the procedural timetable that was adopted.

8. In the May 24 oral hearing, Claimant reserved the right to seek additional emergency measures on May 25 concerning confidentiality of the LA Superior Court proceeding, if necessary after negotiations with Respondent, and a hearing on May 25 to hear such application, if made, was scheduled. The Application was indeed made, and it included as a proposed emergency measure the self-initiated dismissal without prejudice by Respondent of the LA Superior Court action. The existence of the Standstill Agreement was reaffirmed in the May 25 oral hearing. At the conclusion of the oral hearing on May 25, the EA entered an Order recited into the stenographic record directing Respondent to cause the withdrawal without prejudice of the LA Superior Court action and to take all possible steps to effect the expungement of the docket entry of the filing, and to report on compliance to the EA within 24 hours. The EA also stated that he intended to make an Award the following day providing this same relief, and granted Respondent until midnight Pacific

Time to submit further submissions as to why the Award should not be made and why the Order should be vacated or modified.

9. Rather than make the invited submissions, Respondent's counsel notified the EA in an email time stamped 11:59 p.m. Pacific Time on May 25, that Respondent was "withdrawing" from the arbitration and intended to apply to a court to stay the arbitration. The declaration of an intention to seek a stay from a court may or may not imply an intention to violate the May 25 Order and the Standstill Agreement. This depends on whether the relief is sought within the LA Superior Court action. It was not the intention of the May 25 Order, and it was not the intention of the May 26 Award, to prevent the filing of a judicial application for a stay of this arbitration in a proceeding separate from the LA Superior Court action.

10. Nevertheless, after my May 26 Award, Respondent not only submitted an Amended Complaint in LA Superior Court that contended erroneously that I had prohibited Respondent from seeking an injunction affecting the emergency arbitration in LA Superior Court, but Respondent then proceeded to make the injunction application within the pending and not withdrawn LA Superior Court action rather than in a separate proceeding.

11. On May 27, 2021, Claimant attempted to commence a proceeding in the US District Court for the Southern District of New York (SDNY) to confirm the May 26 Award, by filing an application to file under seal in that Court. On May 28, 2021, the application to file under seal was denied. I am unaware of what further steps have been taken in SDNY by Claimant. However, in email correspondence on May 31, 2021, I clarified that the filing of the LA Superior Court Complaint in conjunction with the May 26 Award was not specifically required by the May 26 Award or by any order I had made. I am unaware of what further steps Claimant may have taken in SDNY.

12. On June 1, 2021 at 10 P.M. ET I was notified by Claimant that Respondent had applied to the LA Superior Court in the pending action, evidently not withdrawn without prejudice as required by my Award dated May 26, 2021, for a temporary restraining order to restrict Claimant from the further prosecution of this emergency arbitration. Claimant submitted to me Respondent's injunction submissions to the LA Superior Court. Claimant also submitted to me its final

submission on arbitral jurisdiction. Claimant requested that I proceed to decide all remaining issues in the emergency arbitration, jurisdiction and merits, and the implication was that it would be desirable if I could do so in advance of the hearing on Respondent's TRO application in LA Superior Court schedule for 8:30 a.m. PT (11:30 a.m. ET) today June 2, 2021. It was also understood, by implication, that any injunction that the LA Superior Court might enter might enjoin Claimant's further prosecution of the emergency arbitration but not necessarily affect directly the liberty of action of the emergency arbitrator.

11. The time frame permits only resolution on a final basis of the jurisdiction issue, and I find persuasive the position that I should finally rule on that issue in advance of the LA Superior Court hearing today.

**Emergency Arbitrator Jurisdiction**

12. This Award resolving Respondent's objection to jurisdiction pertains only to the jurisdiction of the Emergency Arbitrator. Claimant now seeks urgently to have the emergency arbitrator resolve the underlying merits of its application for emergency relief and therefore there is urgency to resolve the threshold issue of jurisdiction. However, the jurisdiction issue having been considerably developed by the parties, it would be inappropriate in my judgment to rely on principles of *prima facie* jurisdiction at this juncture. This Award is intended as a final determination of arbitral jurisdiction for this emergency arbitration, so that there is a jurisdiction basis for me to proceed to make an order or award on the merits of the emergency application.

13. This objection to arbitral jurisdiction was stated by Respondent by its counsel in an email on May 21, 2021. Respondent participated in a preliminary hearing before me concerning its jurisdiction objection on May 24, 2021. In that hearing I established a schedule for the parties to complete briefing on the objection to my jurisdiction. On May 25, 2021 Respondent announced his intention to not participate further in the emergency arbitration, and did not file the brief on jurisdiction that I had invited, or submit the authorities supporting the objection to jurisdiction in the email announcing withdrawal. The citations to authorities relied upon by Respondent are

before me only because Respondent's application in LA Superior Court has been submitted by Claimant on June 1.

14. All of the analysis of emergency arbitrator jurisdiction contained in the Award dated May 26, 2021 is adopted and incorporated here as part of the reasoning. One additional embellishment: Respondent was understood to have attacked the arbitration clause itself as violative of the First Amendment because it deprives Respondent of a right of petition in court. So understood, the argument is contrary to authorities that find no state action in the enforcement of an agreement to arbitrate. *See, e.g.,* Youssofi v. Credit One Financial, 717 Fed. Appx. 745 (9th Cir. 2018) (Memorandum); Roberts v. AT&T Mobility LLC, 877 F.3d 833 (9th Cir. 2017).

15. The May 26 Award was clear in requiring the withdrawal without prejudice of the LA Superior Court Complaint but it did not prohibit Respondent from filing an action in a competent court to vacate that Award and/or to stay the Claimant's pursuit of the emergency arbitration. Respondent stated falsely in the Amended Complaint in LA Superior Court that I had prohibited him from seeking to vacate the Award or to stay the emergency arbitration in LA Superior Court. Clearly I did not. Clearly my Award meant that such relief could be sought in a new action limited to those purposes but just as clearly not in the existing action.

16. The arbitration clause in the partnership agreement, Section 12.10, assigns competence to an arbitrator to determine his or her own jurisdiction if there is a dispute between a partner and the partnership about arbitral jurisdiction. The CPR Non-Administered Rules ("CPR Rules") extend such competence to an emergency arbitrator with respect to his or her jurisdiction. And the parties' agreement for arbitration of "*all disputes of any kind*" between them, in the same sentence in which they accept to have the arbitrator apply the CPR Rules, makes clear and unmistakable their mutual intention to have an arbitrator rule on a challenge to his or her jurisdiction when in a pending arbitration a party objects to arbitral jurisdiction, as Respondent did here.

17. It remains my view that an arbitrator presented with an objection to arbitral jurisdiction in an arbitration governed by rules that empower the arbitrator to rule on such objections may and should so rule, unless judicially enjoined from doing so or unless a court issues an intervening ruling on

the same point. This has not occurred. It also remains my view that I need not address the question of "delegation" because, save for the circumstance where a party asks the arbitrator to stay the arbitration pending judicial determination of arbitrability, that question, in the context of a pending arbitration in which a ruling on jurisdiction is sought, affects only the scope of judicial review of an arbitral ruling on jurisdiction. Respondent did not move for a stay of the arbitration. Respondent objected to arbitral jurisdiction in the arbitration, and then withdrew from further participation. At this point the arguments made by Respondent in Section 4 beginning at page 24 of its injunction submission concern the scope of judicial review of this Award and my May 26 award, not my power to rule on arbitral jurisdiction in the first instance in an arbitration in which a jurisdiction objection was lodged.

18. The Federal Arbitration Act applies. The arguments and authorities in this regard in Claimant's June 1, 2021 submission are persuasive. The FAA does not entirely exclude a role for state law in regard to an arbitration agreement. But here the parties subjected the entire partnership agreement including the arbitration clause to the law of Delaware, and by agreeing that the place of arbitration would be Chicago or New York, they accepted by implication the application of any provisions of the arbitration laws in those states that bind participants in arbitrations held there.

19. Whether FAA Chapter 2 applies is a question I need not decide. This appears to impact mainly federal subject matter jurisdiction of any proceedings to enforce or vacate my Awards.

20. Respondent's arguments to the LA Superior Court on the question of whether a court or arbitrator primarily decides arbitral jurisdiction in this case similarly need not be addressed. They concern only the scope of judicial review of my Awards, and whether the LA Superior Court should enjoin Claimant's pursuit of the emergency arbitration. As noted, Respondent did not apply for a stay of the emergency arbitration to the Emergency Arbitrator.

21. Respondent in its injunction submission to the LA Superior Court relies on Section 925 of the California Labor Code. He argues that he "is likely to succeed on his objection to arbitrating in New York...." But Respondent objected in this emergency arbitration to arbitrating anywhere, including California. He sought a ruling that the entire arbitration clause was invalid, not only its

venue provision. He filed a lawsuit in a California court, not an arbitration, and not an application to invalidate the arbitral venue clause and governing law clause.

22. California Labor Code Section 925 treats an agreement to arbitrate in New York or Chicago as a "require[ment] ... to adjudicate outside California" — see Section 925(d) — and thereby purports to nullify such an agreement to arbitrate to that extent and to require that the "adjudication" i.e. the arbitration take place in California. On its face, and assuming without deciding that Respondent is an employee and Claimant an employer, Section 925 requires that the arbitral venue be in California not that the agreement to arbitrate is entirely nullified. The statute post-dates Preston v. Ferrer, 551 U.S. 1190 (2008) by eight years, and the Legislature is presumed to have been mindful of its holding.

23. Preston v Ferrer did not decide the precise question of whether a statute like Section 925 can apply to invalidate an FAA-governed arbitration agreement, to the extent that, or in its entirety because, it fails to provide for arbitration in California under California law. Perhaps the California legislature believed that so long as it interfered only with the contractual choice of arbitral venue and governing law, and not with arbitration itself, its enactment would survive pre-emption scrutiny under the FAA. But the Supreme Court of the United States has made clear that FAA Section 2 and in turn FAA pre-emption rules apply to all terms of the arbitration agreement and not merely to the choice to arbitrate not litigate. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748-49 (2011).

24. Respondent made no effort to deal with the FAA pre-emption jurisprudence before me. He makes no effort to deal with that jurisprudence in his submission for injunctive relief to the LA Superior Court. It was Respondent's burden to persuade me of the legal basis for his objection to arbitral jurisdiction. By withdrawing from the proceedings he did not do so directly. And the injunction brief submitted in LA Superior Court, provided to me by Claimant, simply dodges the FAA pre-emption question.

25. I have sought since May 21 the position of Respondent on why US Supreme Court pre-emption case law does not control. Respondent did not answer the question before withdrawing from the

arbitration, and does not discuss that case law in its submission for an injunction to the LA Superior Court.

26. It is evident from Respondent's injunction submission in the LA Superior Court that he does not assert unconscionability of the arbitration agreement itself. Rather he asserts that the absence of meaningful choice in regard to certain provisions of the partnership agreement should drive the conclusion that he was an employee not a partner under Section 925 of the California Labor Code. My conclusion that Respondent has failed to demonstrate that Section 925 invalidates the arbitration agreement does not depend on the employee-or-partner issue. So I do not address it.

27. Section 925 also pertains to "a claim arising in California." The question here is not whether the claims in the LA Superior Court Action arose in California, but whether the claims in this emergency arbitration did. Respondent made no submission to me on that issue in this emergency arbitration and his injunction submission does not touch this point. In this respect as well, Respondent fails to sustain his burden to support his objection to emergency arbitral jurisdiction.

28. In the injunction submission Respondent cites a case he did not mention in the proceedings before me, Sargon Enterprises v. Browne George Ross LLP, 15 Cal. App.5th 749 (2017). The *Sargon* court did not apply the FAA. It applied the California Arbitration Act (CAA). Its holding was that an arbitral award that granted breach of contract damages, for a plaintiff for having initially brought an arbitrable dispute in court, violated plaintiff's right under the CAA to a judicial determination of arbitrability. This decision did not concern the FAA or the FAA jurisprudence on arbitral power to decide arbitrability. Moreover *Sargon* concerns not the existence of arbitral jurisdiction but the consequences an arbitrator under California law may impose for a party's attempt to contest arbitrability by presenting the merits of the dispute directly to a court in a lawsuit. This case if relevant at all pertains to enforcement or vacatur of my May 26 Award and not to my jurisdiction.

29. Respondent's contentions about the US Constitution and First Amendment in its injunction submission pertain to enforceability of my May 26 Award, not to my jurisdiction to issue that or any Award.

30. I find that arbitral jurisdiction to decide Claimant's original emergency measures application exists.

THEREFORE I AWARD AS FOLLOWS:

1. Respondent's objection to the jurisdiction of the Emergency Arbitrator is dismissed.
2. As this Award deals only with jurisdiction, and I construe CPR Rule 14.11 to pertain to an award granting or denying an emergency measure, any further determination concerning CPR administrative fees, Emergency Arbitrator fees, and the parties' legal fees and expenses, and the amounts and allocation thereof, is reserved.

Award made at the place of arbitration, New York, New York, this 2d day of June 2021.

*M G*

Marc J. Goldstein, Emergency Arbitrator