PAUL D. MURPHY (State Bar No. 159556)
*pmurphy@murphyrosen.com*
DANIEL N. CSILLAG (State Bar No. 266773)
*dcsillag@murphyrosen.com*
MURPHY ROSEN LLP
100 Wilshire Boulevard, Suite 1300
Santa Monica, California 90401-1142
Telephone:  (310) 899-3300
Facsimile:   (310) 399-7201

Attorneys for Plaintiff Jinshu "John" Zhang

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINSHU "JOHN" ZHANG,<br><br>           Plaintiff,<br><br>vs.<br><br>DENTONS U.S. LLP; MICHAEL T. MCNAMARA; EDWARD J. REICH; and DOES 1 through 50,<br><br>           Defendants. | Case No. 2:21−cv−04682 RGK (JCx)<br><br>**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed Concurrently with Compendium of Declarations and Exhibits; [Proposed] Order]**<br><br>Date:  TBD<br>Time: TBD<br>Crtm: TBD<br><br>Complaint Filed in LASC: May 23, 2021 |

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

# TABLE OF CONTENTS

EX PARTE APPLICATION ................................................................................6

The Forum Shopping ........................................................................................7

The Dispute ......................................................................................................9

The Attempt To Keep The Dispute Private ...................................................10

Request for an Order to Show Cause .............................................................17

Request for a Temporary Restraining Order .................................................18

Notice of this Application ..............................................................................20

MEMORANDUM OF POINTS AND AUTHORITIES ..................................21

I.      INTRODUCTION ....................................................................................21

II.     FACTUAL BACKGROUND ...................................................................22

III.    LEGAL ARGUMENT .............................................................................25

A.  Zhang Is Likely to Prevail On The "Who Decides?" Issue. .........................25

1. The Arbitrator Lacked Jurisdiction to Decide Arbitrability.........................25

2. Labor Code Section 925 Prohibits a New York Arbitration. .......................28

3. The Emergency Award Violates Zhang's Statutory and Constitutional

Rights...............................................................................................................31

4. The Purported Delegation to an Arbitrator Fails for Lack of

Definitiveness ..................................................................................................33

B. Absent Immediate Relief, Zhang Is Highly Likely To Suffer Irreparable

Harm.................................................................................................................38

C. The Balance of Equities Tilts Sharply in Zhang's Favor.............................38

D. A TRO Is In The Public Interest. ................................................................39

IV.  CONCLUSION .........................................................................................40

CERTIFICATE OF SERVICE ...........................................................................41

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
  24 Cal.4th 83 (2000)................................................................29, 34

*Benaroya v. Willis*,
  23 Cal.App.5th 464 (2018).............................................................28

*Dennison v. Rosland Capital LLC*,
  47 Cal.App.5th 204......................................................................35

*Depuy Synthes Sales, Inc. v. Stryker Corp.*,
  2020 U.S. Dist. LEXIS 199271 (C.D. Cal. Sep. 29, 2020)...............31

*E. & J. Gallo Winery v. Andina Licores, S.A.*,
  446 F.3d 984 (9th Cir. 2006)........................................................33

*Farris C. Seabrook*,
  677 F.3d 858, 864 (9th Cir. 2012)...............................................25

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..............................................................*passim*

*Gilbert Street Developers LLC v. La Quinta Homes, LLC*,
  174 Cal.App.4th 1185 (2009)....................................................36, 37

*Gilbert v. Fernald*,
  2021 U.S. Dist. LEXIS 43477 (C.D. Cal. Jan. 29, 2021)................25

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) .......................................................26, 27, 28

*Howsam v. Dean Witter Reynolds*,
  537 U.S. 79 (2002) ......................................................................26

*Laclede Gas Co. v. St. Charles County, Mo.*,
  713 F.3d 413 (8th Cir. 2013) .......................................................21

*Las Vegas v. Mirage Casino-Hotel, Inc.*,
  911 F.3d 588 (9th Cir. 2018).........................................................26

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-899-7201

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

*McKellar v. Mithril Capital Management, LLC*,
  2020 U.S. Dist. LEXIS 44080 (N.D. Cal. Mar. 13, 2020) ..........................29, 30

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*,
  22 Cal.App.5th 1096 (2018) ...................................................22, 26

*Pierman v. Stryker Corp.*,
  2020 U.S. Dist. LEXIS 12971 (S.D. Cal. Jan. 23, 2020) ................................31

*Ramos v. Superior Court*,
  28 Cal.App.5th 1042 (2018) ...........................................29, 30, 34

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988) ...............................................................33

*Sandoval-Ryan v. Oleander Holdings LLC*,
  58 Cal.App.5th 217 (2020) ......................................................26

*Sargon Enterprises, Inc. v. Browne George Ross LLP*,
  15 Cal.App.5th 749 (2017) ..............................................26, 32

*Tee Turtle, LLC v. ABmask*,
  2021 U.S. Dist. LEXIS 83564 (C.D. Cal. Apr. 29, 2021)..............................25

*Yeomans v. World In. Grp. Ins. Agency, Inc.*,
  2021 U.S. Dist. LEXIS 52226 (N.D. Cal. Mar. 19, 2021) ...........................33

**Statutes**

California Arbitration Act ..........................................................32

Labor Code § 925 ..............................................................*passim*

Labor Code § 925(a) ..............................................................31

Labor Code § 925(e) ..............................................................31

Labor Code § 925(f) ..............................................................31

Labor Code § 1102.5 ...............................................................29

**Other Authorities**

Cal. Const. art. I, § 3(a) ..........................................................33

Cal.Rules of Court 2.550 ...........................................................24

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

U.S. Const. amend. I ............................................................................................... 32

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

# EX PARTE APPLICATION

This application ("Application") seeks a simple but critical remedy: a short pause in a recently filed arbitration. The purpose of this pause is to allow either this Court or the Los Angeles Superior Court (if the case is remanded) to decide in the first instance whether, in the context of plaintiff Jinshu "John" Zhang's ("Plaintiff" or "Zhang") statutory and common law wrongful termination and racial discrimination claims, an underlying contract clearly and unmistakably delegates authority to decide arbitrability to an arbitrator. This Application is about the extremely important question: Who decides who decides arbitrability?

Whether a contract delegates this "Who decides?" issue to an arbitrator depends on whether the contract clearly and unmistakably provides for such delegation. Zhang contends that the underlying contract does *not* clearly and unmistakably delegate this authority to an arbitrator, and that only a court can lawfully decide this threshold question. Defendant Dentons U.S. LLP and the individually named defendants (collectively, "Dentons") take the opposite position, contending that the contract *does* clearly and unmistakably delegate the issue of arbitrability to the arbitrator only, and that therefore no court can consider this issue. The resolution of this "Who Decides?" issue is expected to have a profound impact on the parties' various disputes.

In the related arbitration—commenced on the very day Dentons wrongfully terminated Zhang—Dentons sought and obtained an emergency arbitrator, who then unilaterally rushed to decide this "Who decides?" issue in a no-notice hearing without written briefing. At that no-notice hearing, Zhang notified Dentons and the emergency arbitrator that he had filed a complaint in the Superior Court seeking a declaration that the contract does not clearly and unmistakably delegate authority to decide arbitrability to the arbitrator, and he asked the Emergency Arbitrator to stay the arbitration pending the Superior Court's ruling on that issue. The arbitrator flatly refused and, despite United States Supreme Court authority to

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

the contrary, held that he had the authority to decide the "Who Decides?" issue (for which he charged a $60,000 retainer) solely on the ground that Dentons had preemptively commenced an arbitration.  Dentons has since encouraged the emergency arbitrator to make further rulings, all designed to prejudice Zhang, and each time, the arbitrator with untoward zeal has expeditiously complied with these requests.  In fact, the emergency arbitrator is currently considering more "emergency" requests and, so far, has given Dentons everything it has asked for and more.

This Application seeks to pause the arbitration to give this Court the time to address and resolve two gatekeeper issues.  First, has this case been lawfully removed from the Superior Court?  Second, if so, who decides the issue of arbitrability, this Court (or the Superior Court on remand) or the arbitrator?

### The Forum Shopping

Zhang originally presented this request for a pause in a TRO application to the Superior Court.  On June 2, 2021, the Superior Court's Writs and Receivers Department was poised to rule on this issue.  However, because Dentons took the position that all pleadings in the Superior Court had to be filed under seal, the judge presiding over that TRO application, the Honorable James C. Chalfant, refused to rule on a provisionally-sealed application.  He suggested that, "as a courtesy," Zhang withdraw his Application and give Dentons some time to file a memorandum supporting its sealing request.  (Exh. FF, Transcript at 6.)  Judge Chalfant directed the parties to meet and confer on the extent to which documents should be sealed, give Dentons "a day" to file a brief, and then return for a hearing.  (*Id.* at 4.)  At the same time, Judge Chalfant warned the parties that despite giving Dentons this opportunity to support a sealing request, he was "very unlikely" to grant it.  (*Id.* at 4-5.)  But before the hearing adjourned, Dentons tried to push Chalfant to deny the TRO application as moot because that same morning right before the hearing, the emergency arbitrator (at Dentons' urging) had issued

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

another ruling supposedly reaffirming his jurisdiction.  But Judge Chalfant balked at the suggestion, specifically noting that the TRO was not moot because the arbitrator's attempt to rule simply "begs the question because the Plaintiff is seeking to stop the Arbitrator....  [I]t does not moot the issues."  (*Id.* at 6.)

Dentons was clearly distressed by Judge Chalfant's initial evaluation of the confidentiality and jurisdiction issues.  Immediately after the parties' meet and confer was complete and Zhang notified Dentons of his intent to renew the TRO application, Dentons raced to this Court with a bogus removal, thereby depriving Judge Chalfant (for now) of jurisdiction to rule on these issues.  Dentons' strategy is clear: preserve the emergency arbitrator's ability to issue further rulings by delaying this TRO Application by any means necessary, even by blatant and ill-founded judge shopping.

In a further transparent attempt to preserve some confidentiality even on removal, Dentons' Notice of Removal did not attach either the Complaint or the First Amended Complaint.  But a national law firm must know that the basic first step for any removal is to include a copy of all previously filed pleadings, and especially the operative complaint.  Absent gross negligence, the failure can only be explained as Dentons' calculated decision not to attach the complaints.  In fact, Defendants already requested one Federal District Judge in the Southern District of New York to confirm one of the rogue arbitrator's interim awards, but wanted that court to keep the entire proceedings secret, including Zhang's operative complaint.  Without any briefing from Zhang, the Southern District of New York soundly rejected that request.  Defendants' Notice of Removal neglected to tell this Court about, or attach, that ruling too, but Plaintiff attaches it here as Exhibit U.

As detailed below, Dentons' race to secure arbitral jurisdiction and confidentiality of the dispute without any meaningful judicial oversight confirms why this case screams for a TRO.  Whether this Court or the Superior Court

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

ultimately assumes jurisdiction over this case, a court must decide the gatekeeper "Who Decides?" issue—and not on a no-notice, no-briefing basis, but after full briefing and thoughtful deliberation.  This TRO Application simply asks for time to allow the appropriate court to undertake that initial review.  The requested relief is warranted, will not prejudice Dentons, and will otherwise preserve the *status quo* pending resolution of these threshold jurisdictional issues.  The relief should be granted.

### The Dispute

Defendant Dentons is the world's largest law firm.  As alleged in the First Amended Complaint ("FAC"), in April 2021, acting under the direction of its CEO, defendant Michael McNamara, and its General Counsel, defendant Edward Reich, Dentons forged a document in an attempt to transfer tens of millions of dollars from a Client.[1]  When plaintiff Jinshu "John" Zhang ("Zhang" or "Plaintiff") learned of the forgery, he immediately reported the forgery to Dentons' governing board, and demanded, among other things, McNamara's immediate termination.

Five days later, and without even interviewing Zhang, the Board retaliated against him by wrongfully terminating his employment and immediately—within minutes of his termination—commencing an arbitration *against him* for supposedly breaching the Partnership Agreement by negotiating his compensation "off-cycle," and other made-up or make-weight arguments.  Dentons also threatened Zhang with additional reprisals in the event that he went public with his concerns.  Relying on an all-encompassing confidentiality clause in the Dentons's Partnership Agreement, Dentons specifically demanded that Zhang not file any

---

[1] Plaintiff is highly cognizant of his ethical duties to protect client confidences and privileges.  To this end, this Application has been drafted to protect the Client's identity, and the client will be referred to as "Client" in all instances.  In addition, the Application does not disclose, and fully protects, all privileged communications and all Client confidential information.

*PRINTED ON RECYCLED PAPER*

lawsuit on the threat of holding Zhang personally liable for damages: "In conclusion, we remind you that any attempt by you to take any dispute with Dentons to court is an express violation of this confidentiality agreement . . . . If you violate these sections by filing any claim in court, Dentons reserves its rights to seek damages relating to that filing." (Exh. E at 2.) Zhang notified Dentons that he was filing suit anyway.

### The Attempt To Keep The Dispute Private

Dentons then embarked on a plan to ensure that if Zhang did file, Dentons could at least force Zhang to file the lawsuit under seal. In executing its plan, on Friday, May 21, 2021, at 1:55 p.m., Dentons first requested an "Emergency Arbitrator" (a lawyer with no judicial experience)—via a short email without a single legal citation—to issue a temporary restraining order forcing Zhang to file this lawsuit under seal. (Exh. F.)[2] Zhang responded by objecting to the Emergency Arbitrator's jurisdiction, but also gave assurances to Dentons and the arbitrator that he was already planning to honor Dentons' request and file provisionally under seal. (Exh. G.) But at 4:44 pm—without the benefit of any legal briefing or oral argument—the Emergency Arbitrator granted the order anyway. (Exh. H.)

Zhang then filed a Complaint in Los Angeles Superior Court. Consistent with the order and Zhang's assurances, he filed the Complaint provisionally under seal. (Murphy Decl., ¶ 5.) Among other relief requested in the Complaint, Zhang asked the LASC to decide whether Dentons' "Amended and Restated Partnership Agreement of Dentons US LLP (Effective as of January 27, 2020)" (the "Partnership Agreement") "clearly and unmistakably" delegates the authority to determine arbitrability to the Emergency Arbitrator. (Exh. A, Compl. at ¶ 69.)

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

---

[2] All referenced exhibits and testimony can be found in Plaintiff's separately filed Compendium of Declarations and Exhibits filed in support of this Application. Declarations are cited using the name of the declarant, followed by the designation "Decl." (*i.e.* "Murphy Decl.").

*PRINTED ON RECYCLED PAPER*

This threshold issue of arbitrability is at the center of this case and this Application.

But the Emergency Arbitrator was not done.  When Zhang notified the Emergency Arbitrator that he objected to the arbitrator's jurisdiction, this apparently triggered the Emergency Arbitrator's wrath because at 5:07 p.m. on a Friday—just 23 minutes after issuing the TRO—the Emergency Arbitrator sent an email to all counsel unilaterally scheduling a hearing on the issue of his jurisdiction for the next business day: Monday May 24, 2021, at 1:00 p.m.  (Exh. I.)  This email was sent despite *no party* requesting the Emergency Arbitrator to then rule on the jurisdiction issue.  (Murphy Decl., ¶ 6.)  He also "invited" (arbitrator-speak for ordered) the parties to submit "written arguments about arbitral jurisdiction" by 7:00 ***a.m***. that Monday morning.  (Exh. I.)  In effect, without request from any party and without regard to the weekend schedule of the parties and their counsel, the Emergency Arbitrator gave the parties *zero* business days to brief a highly complex jurisdictional issue.

That next morning, Saturday, May 22, counsel for Zhang then suffered a personal medical emergency, but that did not slow down the Emergency Arbitrator either.  Zhang is represented by two lawyers at Murphy Rosen LLP—Paul Murphy and Daniel Csillag.  On Saturday morning, Mr. Csillag's wife and two-year-old daughter suffered a serious fall, resulting in significant injuries with his daughter being placed in a full-body cast on one leg up to her chest.  (Csillag Decl., ¶¶ 2-8.)  Murphy Rosen reached out to the Emergency Arbitrator and sought to continue the Monday hearing.  (Exh. J.)  The Emergency Arbitrator did not respond until the next morning, Sunday, May 23, 2021, when he ruled that despite the medical emergency, the hearing would go forward the next day as scheduled, although no written submissions would be allowed.  (Exh. K.)

The May 24, 2021 hearing on jurisdiction then proceeded as scheduled (but without Mr. Csillag who remained unavailable).  (Csillag Decl. ¶¶ 8-9.)  At the

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

hearing, Zhang argued that the Partnership Agreement did not "clearly and unmistakably" delegate the authority to determine arbitrability to the Emergency Arbitrator. (Exh. L, Tr. starting at 8.) Zhang further argued that under well-settled precedent from the United States Supreme Court, when a party challenges whether arbitrability has been delegated to an arbitrator, that issue must be resolved in the first instance by, and is reserved for, *a court* and not the arbitrator. (*Id.* at 9-17.) Zhang argued that based on that binding precedent, it was "pencils down" in the arbitration, and that because Zhang had filed an action in this Court seeking to resolve the delegation issue, the Emergency Arbitrator had to defer and allow this Court to resolve this gatekeeper issue. (*Id.*)

The Emergency Arbitrator summarily rejected Zhang's argument. Without the benefit of any written briefing, and without citing any authority, the Emergency Arbitrator ruled that when the proponent of arbitration initiates an arbitration before the opposition party files a lawsuit, the arbitrator is empowered to rule on delegation, notwithstanding the opposing party's demand that a court determine that issue—creating a new rule of law not followed in any jurisdiction and that encourages a venue race. (*See*, *e.g.*, *id.* at 18-20.) The Emergency Arbitrator then demanded immediate argument on the enforceability of the arbitration clause itself (as opposed to the delegation clause). Despite no legal briefing on this issue either, Zhang orally previewed why the Partnership Agreement's arbitration clause was unconscionable, and why the venue and choice-of-law provisions separately violated California Labor Code section 925. (*Id.* at 35-37 (Section 925) 37-48 (unconscionability.) The Emergency Arbitrator summarily rejected these arguments too, and ruled he had "*prima facie*" jurisdiction to issue emergency relief. (*See*, *e.g.*, *id.* at 88.) He then set a further expedited briefing schedule to finalize his jurisdiction ruling.

Also at the May 24, 2021 hearing, the Emergency Arbitrator on his own initiative pushed Zhang to dismiss the Complaint in this case entirely, without

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

prejudice.  (*Id.* at 96, 103.)  He then *sua sponte* invited Dentons to seek an order of dismissal the following morning if Dentons concluded that the under-seal filing did not sufficiently protect Dentons.  (*Id.* at 108, 112.)  The next morning, on Tuesday, May 25, 2021, at 10:09 a.m., Dentons took up that invitation and filed another emergency application.  In this application, Dentons sought a mandatory injunction requiring Zhang affirmatively to dismiss the Complaint in this action without prejudice.  (Exh. M.)  The ground for the application was that the Complaint in its entirety was confidential, that even revealing the names of the parties would cause Dentons irreparable harm, and that, although Zhang filed the Complaint under seal, the risk was too great that the Complaint would be unsealed by accident.  (*Id.* at ¶ 9.)  Dentons' entire application is nine numbered paragraphs, with no citation to any case law or statute, and does not specifically identify any confidential information contained in Zhang's Complaint.

The Emergency Arbitrator held a hearing on this application 51 *minutes* later.  (Murphy Decl., ¶ 11.)  Twelve minutes before the scheduled start of the hearing, Zhang managed to submit an email attempting to quickly respond at least to some of the factual misrepresentations in the application.  (Exh. N.)  When the hearing started, the Emergency Arbitrator had not yet even bothered to read it (although when pressed, he quickly did so while the parties waited).  (Exh. O, Tr. at 6.)  At the hearing, Dentons failed to identify any specific information in the Complaint that Dentons contended was actually confidential, privileged or otherwise protectible from public disclosure.  (*Id.* at 20-21.)

Nevertheless, the Emergency Arbitrator found that the risk of Dentons suffering "reputational" harm from the unsealing of Zhang's Complaint alone justified ordering Zhang to immediately dismiss the Complaint without prejudice, and further ordered him to do something that Dentons had not even asked him to order: That Zhang somehow cause to be deleted all references to this action in the Superior Court's Register of Actions—and set *the next morning*, May 26, 2021, as

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

the deadline to show the completion of "initial steps" at compliance.  (*Id.* at 28-29.)  The Emergency Arbitrator then authorized Zhang to file, by midnight on May 25, 2021, a brief arguing why the Emergency Arbitrator should reverse his ruling.  (*Id.*)  At midnight, in lieu of filing that brief, Zhang again objected to the Emergency Arbitrator's assumption of jurisdiction, reiterated his right to have the arbitration stayed pending a court's determination of delegation, and withdrew from the arbitration pending a ruling by the LASC.  (Exh. P.)

The next morning, the Emergency Arbitrator acknowledged Zhang's withdrawal, and issued an order unilaterally setting the venue for the Arbitration in New York (presumably so it could be confirmed there).  (Exh. Q.)  At 8:56 a.m., the Emergency Arbitrator issued a document titled, "Award Granting Emergency Measure Sought In Claimant's Application For Emergency Relief Dated May 25, 2021" (the "Emergency Award"), which ordered Zhang to "withdraw without prejudice the LA Superior Court action" and related actions and to somehow force the Los Angeles Superior Court to "effectuate expungement of the docket entry" and to report the progress of that by 10 a.m. the following day.  (Exh. Q at 11.)

Zhang then immediately filed a First Amended Complaint in this action, adding an additional declaratory relief request that the Emergency Award be declared void and/or vacated as issued in excess of the Emergency Arbitrator's jurisdiction, and that the arbitration must be stayed until a court rules on the issue of arbitrability.  (Exh. B, FAC, ¶ 70.)  Shortly thereafter, the Emergency Arbitrator issued a revised Emergency Award correcting several typographical errors and fixing the amount of the costs awarded against Zhang ($23,035) in connection with the Emergency Award.  (Exh. R.)

Dentons then ran to the Southern District of New York and filed a petition to confirm that award, with a related request to file that petition under seal.  (Murphy Decl., ¶ 16.)  Dentons has not served Zhang with a copy of that petition.

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

(*Id.*)  However, Zhang has learned that Dentons' filing has done exactly what it was concerned the filing in this case would do—it has resulted in the names of the combatants being made public already, with a simple Google search now revealing the existence of the dispute on both PACER and Law 360.  (Exh. V.)  Moreover, on Friday, May 28, 2021, the Southern District of New York issued a four-page order denying Dentons' motion to seal.  (Exh. U.)  That order is publicly available on PACER too.  (Murphy Decl., ¶ 16.)

Undeterred, Dentons then ran back to the Emergency Arbitrator and requested further relief designed to give it more flexibility to enforce the arbitrator's Emergency Award.  (Exh. T.)  The Emergency Arbitrator then requested that Dentons answer several questions, all designed to empower him to issue a further award.  (Exh. X.)

On Tuesday, June 1, 2021, Zhang filed his original TRO Application with Judge Chalfant, and gave notice to Dentons prior to 10:00 a.m. that day.  That evening, at approximately 7:00 p.m., Dentons sent the Application to the Emergency Arbitrator "to notify you that [Zhang] continues to defy your Award and has not dismissed the California Complaint."  Dentons sent a separate email to the Emergency Arbitrator purporting to brief the Emergency Arbitrator's jurisdiction.  (Exhs. AA & BB.)  In both emails, Dentons urged the Emergency Arbitrator to use the materials to "issue an award on jurisdiction and the merits of the Request for Emergency Relief."  (Exhs. AA & BB.)

At 2:38 a.m. the next morning (June 2, 2021), the Emergency Arbitrator "invited" a response from Zhang and encouraged a reconsideration of his withdrawal from the Pending Arbitration.  (Exh. CC.)  Then, at 7:36 a.m., the Emergency Arbitrator issued an order titled, "Final Award On The Jurisdiction Of The Emergency Arbitrator" (the "Jurisdiction Award") (Exh. DD.)  Unsurprisingly, the Emergency Arbitrator authorizes himself to decide arbitrability, and then finds the dispute arbitrable.  What is surprising, though, is

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

the Emergency Arbitrator's admission that he rushed to issue the Jurisdiction Award in order to beat the hearing on Zhang's TRO Application originally set for June 2, 2021.  Specifically, in commenting on Dentons's emails sent to him on the evening of June 1, 2021, the Emergency Arbitrator wrote, "the implication was that it would be desirable if I could do so in advance of the hearing on Respondent's TRO Application in LA Superior Court schedule [sic] for 8:30 a.m. PT (11:30 a.m. ET) today June 2, 2021.  It was also understood, by implication, that any injunction that the LA Superior Court might enter might enjoin Claimant's further prosecution of the emergency arbitration by not necessarily affect directly the liberty of action of the emergency arbitrator."  (Exh. DD at 4-5.)  These hasty actions further confirm that Dentons is hell-bent on continuing its aggressive pursuit to have the Emergency Arbitrator rule against Zhang on every possible issue, including jurisdiction, and that the Emergency Arbitrator has lost all semblance of neutrality.

On June 2, 2021, Judge Chalfant held a hearing on Zhang's Application, but notified the parties up front that he would only proceed to the merits if Zhang withdrew his request for filing under seal or, in the alternative, if Zhang refiled his TRO Application with a concurrent motion to seal.  After Zhang explained that Defendants were the parties insisting on confidentiality, Judge Chalfant suggested the parties meet and confer, as a courtesy to Dentons, to allow the filing of concurrent applications—Zhang's refiling of the TRO Application, combined with Defendants *ex parte* application to seal.  These exchanges are reflected in the transcript.  (Exh. FF, at 4-6.)

The parties then entered a "stand-still" agreement that expired on June 8, 2021 at 12:00 p.m.  (Murphy Decl. ¶ 22.)  Within two hours of the expiration of the "stand-still" agreement, Dentons was at it again, running back to the Emergency Arbitrator and urging him to grant still more relief against Zhang: "Claimant respectfully submits that the Request sets forth sufficient evidence and

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

authority to support all of the requested relief. Claimant requests that you enter an award that is final for purposes of judicial enforcement granting the requested relief on the basis of the record presently before you." (Exh. GG.) Dentons even bragged that it was removing this case to federal court. Zhang responded by again protesting the Emergency Arbitrator's jurisdiction, and again requesting that the Emergency Arbitrator make no further rulings until a court resolves the threshold jurisdiction issue. (Exh. HH.) As of the filing of this TRO application, the Emergency Arbitrator has not agreed to Zhang's request. (Murphy Decl., ¶ 23.)

Zhang now makes this Application designed to pause the arbitration and give this Court the ability to (a) determine whether Dentons' removal was appropriate and, if so (b) consider and resolve the vitally important issue of who decides the issue of arbitrability in the first instance, the Emergency Arbitrator or this Court.

## Request for an Order to Show Cause

Based on the foregoing, Zhang hereby requests that the Court issue an Order To Show Cause ("OSC") why a preliminary injunction should not issue pending resolution of these judicial and arbitrable jurisdiction issues, (a) staying the Arbitration captioned, "Dentons US LLP v. Jinshu 'John' Zhang" (the "Pending Arbitration"), including the Emergency Award, the Jurisdiction Award, and all other orders issued by the Emergency Arbitrator, and (b) enjoining Defendants, their agents, partners, employees, affiliates, and persons acting on their behalf from:

1) Taking any further actions in the Pending Arbitration until this Court rules on whether the Partnership Agreement clearly and unmistakably delegates resolving arbitrability to the arbitrator; and

2) Initiating or taking any other actions in any other litigations or arbitrations against Zhang in furtherance of the Pending Arbitration until

PRINTED ON RECYCLED PAPER

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

this Court rules on whether the Partnership Agreement clearly and unmistakably delegates resolving arbitrability to the arbitrator.

Zhang makes this Application for an OSC on the grounds that (1) Dentons removal is procedurally and substantively defective, and at a minimum, should be brief, argued and resolved; (2) a court has exclusive jurisdiction to determine whether a contract delegates authority to determine arbitrability to an arbitrator; (3) the Emergency Arbitrator's actions taken over Zhang's objections to his jurisdiction, including the issuance of the Emergency Award and Jurisdiction Award, were in excess of his jurisdiction, violative of Zhang's rights, and void as a matter of law; (4) injunctive relief is appropriate to preserve the status quo pending resolution of these jurisdiction issues on the merits; (5) Zhang will suffer irreparable harm absent injunctive relief because the Emergency Order and Jurisdiction Order, which were issued in excess of the Emergency Arbitrator's jurisdiction, violate Zhang's statutory rights, his Rights of Petition and Due Process under the First Amendment, and is an illegal prior restraint, and will force Zhang into the Hobson's Choice of violating these orders and risking a sanction, or sacrificing his statutory and constitutional rights—the violation of which is irreparable harm as a matter of law; and (6) Dentons will suffer no appreciable harm because there is no emergency warranting further actions in the arbitration, and the risk of bad publicity from the lawsuit—the only harm Dentons or the Emergency Arbitrator has ever cited in furtherance of the emergency nature of these awards—is not legally cognizable and is not something that can be meaningfully remedied by the dismissal of this case, especially now that Dentons has preemptively unsealed this case by removing it to this Court.

### Request for a Temporary Restraining Order

Pending the Court's ruling on the OSC, Zhang requests that the Court issue a Temporary Restraining Order ("TRO") that (a) immediately but temporarily stays the Pending Arbitration, including the Emergency Award, the Jurisdiction

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Award, and all other orders issued by the Emergency Arbitrator, and (b) immediately but temporarily enjoins Defendants, their agents, partners, employees, affiliates, and persons acting on their behalf from:

1) Taking any further actions in the Pending Arbitration until this Court rules on whether the Partnership Agreement clearly and unmistakably delegates resolving arbitrability to the arbitrator; and

2) Initiating or taking any other actions in any other litigations or arbitrations against Zhang in furtherance of the Pending Arbitration until this Court rules on whether the Partnership Agreement clearly and unmistakably delegates resolving arbitrability to the arbitrator.

Zhang applies for a TRO on several grounds.  *First*, without a TRO, Zhang may be held in contempt immediately under the terms of the Emergency Award and Jurisdiction Award by failing to dismiss this Action and further for filing this Application.  Indeed, Dentons has already returned to the Emergency Arbitrator numerous times, including after removing this case, and is asking the Emergency Arbitrator to issue further orders against Zhang on the ground that Zhang has refused to dismiss this case, has amended the Complaint, and is continuing to litigate this case.  (Exhs. W, X, HH.)

*Second*, if enforced, the Awards would violate Zhang's unwaivable statutory and constitutional rights, including his Rights of Petition and Due Process, and constitute an illegal prior restraint.

*Third,* allowing the arbitration to continue before a court can rule on the arbitrability issue violates bedrock law holding that a court, and not an arbitrator, must determine whether a contract delegates authority to decide arbitrability to an arbitrator, and therefore a TRO is necessary to preserve the status quo until a court can consider and rule on the merits of Zhang's jurisdiction objections.

Without a TRO, Zhang will suffer irreparable harm in that he will be subject to orders grossly violating his rights and issued in excess of the

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Emergency Arbitrator's jurisdiction, will be deprived of his right to have a court in the first instance determine whether he must litigate arbitrability before an arbitrator, and will be at risk of being held in contempt of violating the Emergency Award, the Jurisdiction Award, and any other awards Dentons manages to get the Emergency Arbitrator to grant.  Further, Dentons has attempted to open yet another front in this war and has recently filed new litigation in the Southern District of New York to confirm the Emergency Award (although the current status of that litigation is unknown).  Dentons has already taken active and aggressive steps to get the Emergency Award affirmed, with the obvious goal of getting this action terminated and holding Zhang in contempt.

### Notice of this Application

As separately set forth in the Declaration of Paul D. Murphy, contemporaneous with the filing of this Application, Zhang's counsel is serving the Application on Patrick Collins and Joseph Akrotirianakis, counsel for Defendant.

Zhang requests this TRO and OSC based on this Application, the attached Memorandum of Points and Authorities, the Separately Filed Compendium of Declarations and Exhibits, and on any other further evidence or argument that the Court receives in conjunction with ruling on this matter.

Respectfully submitted,

DATED:  June 9, 2021                MURPHY ROSEN LLP


By: /s/ Paul D. Murphy
   Paul D. Murphy
   Daniel N. Csillag
   Attorneys for Plaintiff
   Jinshu "John" Zhang

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Dentons U.S. LLP ("Dentons") is the world's largest law firm. In April 2021, acting under the direction of its CEO, defendant Michael McNamara, and its General Counsel, defendant Edward Reich, Dentons forged a document in an attempt to transfer tens of millions of dollars from a Client.  When plaintiff Jinshu "John" Zhang ("Zhang" or "Plaintiff") learned of the forgery, he immediately reported it to Dentons' governing board, and demanded, among other things, McNamara's immediate termination.  But just days later, without even interviewing Zhang, the Board retaliated by wrongfully terminating his employment and immediately commencing an arbitration *against him* for supposedly breaching the Partnership Agreement.  Dentons then installed an "Emergency Arbitrator," and sought an order restraining Zhang from publicly filing the lawsuit they knew was coming.[3]

Zhang objected to the Emergency Arbitrator's jurisdiction and demanded a stay in the proceedings until the Los Angeles Superior Court ruled on the arbitrator's jurisdiction to decide arbitrability.  Zhang made this demand based on U.S. Supreme Court law imposing a presumption that courts will decide whether an arbitrator has jurisdiction unless there is clear and unmistakable intent to delegate that specific issue to the arbitrator—and that it is for a court, not an arbitrator, to decide whether such clear and unmistakable intent exists.  *See e.g.,*

---

[3] The Court may be confused—rightfully—to learn that this is a wrongful termination case under California's Labor Code, which Defendants failed to disclose in their Notice of Removal.  Defendants also failed to attach the Superior Court Complaint or First Amended Complaint, as required to effectuate removal.  Even a cursory review of these pleadings confirms that this Court lacks subject-matter jurisdiction over this case.  Zhang needs immediate relief, however, because Defendants' improper removal was done to "beat" the state-court hearing on this application.  All that Zhang is seeking here is for this Court to exercise its equitable powers to preserve the *status quo* while these federal and arbitral jurisdiction issues are sorted out.  *See Laclede Gas Co. v. St. Charles County, Mo.*, 713 F.3d 413, 416-17 (8th Cir. 2013) (not error to issue preliminary injunction despite jurisdictional objection).

PRINTED ON RECYCLED PAPER

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096, 1109 (2018) ("California courts have recognized that a court is the appropriate entity to resolve challenges to a delegation clause nested in an arbitration clause.").  As described more fully above, the Emergency Arbitrator rejected Zhang's argument without any semblance of due process—ending with directions that Zhang dismiss his Complaint here.

Zhang now files this application in which he seeks a TRO to force Defendants to temporarily pause their efforts to arbitrate and enforce the Awards, and to otherwise preserve the *status quo* while this Court considers these important issues.  *See e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995) (noting as "true" that a party resisting arbitration can seek to enjoin an arbitration to allow a court to rule on a delegation clause).

## II.  FACTUAL BACKGROUND

On April 30, 2021, Zhang reported a crime to the Dentons U.S. Board: That Dentons' upper management had orchestrated a plan which resulted in a forged document purporting to come from a Client authorizing a third party to transfer certain Client-held securities to Dentons.  The purpose of this transfer was to satisfy a contingency fee that the Client owed to Dentons but was not yet collectable because certain preconditions had not been met.  Dentons was growing leery of the Client and the closeness of the Client to Zhang, and was trying to go around both to secure the fee.  After five days of silence—and without interviewing Zhang—Zhang received an email from Defendant Edward Reich, Dentons' General Counsel, terminating his employment.

To cover up their egregious violation of California's strong statutory and common law protections for whistleblowers, within minutes of his termination, Dentons initiated a confidential arbitration against Zhang.  Zhang is a signatory to the "Amended and Restated Partnership Agreement of Dentons US LLP (Effective as of January 27, 2020)" (the "Partnership Agreement").  Section 12.10.3 of the

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Partnership Agreement requires that "[a]ll complaints, petitions, actions, motions or other documents filed in any federal or state court in connection with the enforcement, interpretation or breach of any provision of this Agreement shall be filed under seal." (Exh. C.)

On May 14, 2021, based on this overbearing secrecy provision, Dentons filed a Request for Emergency Measures of Protection By An Emergency Arbitrator (the "Request") that sought to restrain Zhang from filing "any client, sensitive personal, or Firm confidential information in breach of the Partnership Agreement publicly or privately through media, courts, administrative filings, or otherwise." (Exh. Y.) This demand for absolute secrecy of this dispute has continued unabated ever since. In fact, from the moment Defendants wrongfully terminated Plaintiff, they have repeatedly and forcefully demanded that if Zhang sued them (as Defendants knew he would, based on their outrageous conduct), Zhang *must* file all pleadings under seal pursuant to the terms of the Partnership Agreement. For example, in a letter sent May 5, 2021, concurrent with Zhang's wrongful termination, Dentons' litigation counsel sent Zhang a letter that expressly threatened to hold Zhang liable not just for a public filing of a lawsuit, but for *any* filing: "In conclusion, we remind you that any attempt by you to take any dispute with Dentons to court is an express violation of this confidentiality agreement . . . . If you violate these sections by filing any claim in court, Dentons reserves its rights to seek damages relating to that filing." (Exh. E.)

Not satisfied to wait for its Request to be briefed and argued, on Friday, May 21, 2021, Dentons filed an emergency "application" (a short email) for a temporary restraining order against Zhang. The application sought: "An order restraining Respondent Zhang from filing any complaint, petition, actions, motions or other documents filed in any federal or state court against Dentons unless he files such complaint, petition, actions, motions or other documents under seal and draws the Court's attention to Section 12.10.3 of the Dentons Partnership

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

-23-

*PRINTED ON RECYCLED PAPER*

Agreement." (Exh. F.)  Dentons further requested that "Zhang be ordered to pay the sum of $100,000 to Dentons for each instance of non-compliance with the terms of the temporary restraining order." (*Id*.)  Notably, Dentons failed to include in its emergency application that Zhang already disclosed to them numerous times that he would be filing an action in the California Superior Court, and did not refer the Emergency Arbitrator to California Rules of Court 2.550 or 2.551. (*Id*.)  While Zhang believed that any such order would be unlawful, Zhang's counsel confirmed that any filing would be under seal—but also objected to the Emergency Arbitrator's jurisdiction. (Exh. G.)

Dentons proceeded with its application anyway, and the Emergency Arbitrator issued the Emergency Award, then the Jurisdiction Award (the "Awards") the morning before the Superior Court's June 2, 2021 hearing on Zhang's original application, which is described in detail above in the Ex Parte Application portion of this pleading.  At the hearing, Defendants argued that the Application was moot because the Emergency Arbitrator had "beat" the court, but the Court rejected that argument. (Exh. FF at 6.)  At the Superior Court's suggestion, Zhang agreed to withdraw his application without prejudice as a courtesy to allow Defendants to file a sealing motion.  After Zhang re-noticed his TRO application and obviously spooked by the Judge's mootness comments, Defendants took advantage of that courtesy to instead improperly remove the case to this Court (hoping to further delay any TRO hearing or at least present it to a different judge).  Simultaneously, Defendants ran back to the Emergency Arbitrator and asked that he issue further awards while the parties wrestle with the removal.  That history demonstrates one simple truth:  This case screams for a TRO to give the parties and the Court time to fully consider these important and complex arbitrability issues—not on twelve minutes' notice, but with benefit of reasonable notice, legal briefing, and appropriate legal analysis.

### III.   <u>LEGAL ARGUMENT</u>

"To obtain a [TRO], Plaintiff has the burden of establishing: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) a balance of equities tips in its favor; and (4) an injunction is in the public interest." *Tee Turtle, LLC v. ABmask*, 2021 U.S. Dist. LEXIS 83564, at *2 (C.D. Cal. Apr. 29, 2021) (*citing Farris C. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). Alternatively, if the plaintiff shows a "likelihood of irreparable injury and that the injunction is in the public interest," the Court may grant a TRO is the plaintiff establishes "serious questions going to the merits and a balance of hardships that tilts sharply [in plaintiff's favor.]" *Gilbert v. Fernald*, 2021 U.S. Dist. LEXIS 43477, at *6-7 (C.D. Cal. Jan. 29, 2021).

### A.   <u>Zhang Is Likely to Prevail On The "Who Decides?" Issue.</u>

#### 1.   <u>The Arbitrator Lacked Jurisdiction to Decide Arbitrability.</u>

At the outset, it is necessary to define in the context of this Application what "likelihood of success" means. Zhang contends that, when the parties disagree on whether they clearly and unmistakably delegated authority to decide arbitrability to an arbitrator, the law requires that a court, and not an arbitrator, decide *that* dispute, and seeks an order vacating the Awards as issued prior to a court making this determination—and thus in excess of the Emergency Arbitrator's jurisdiction. Accordingly, to establish a likelihood of success, Zhang must show only that the law does in fact require that the Court determine "Who decides?" first, and an arbitrator may not proceed when such a request is pending before a court.

The authorities on this point are numerous, and generally cite back to the United States Supreme Court's decision in *First Options*, where a unanimous Supreme Court established the central premise underlying the "who decides?" issue, concluding that "courts should not assume that the parties agreed to arbitrate arbitrability *unless there is 'clear and unmistakable' evidence that they did so*."

PRINTED ON RECYCLED PAPER

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

514 U.S. at 945 (emphasis added)); *Sandoval-Ryan v. Oleander Holdings LLC*, 58 Cal.App.5th 217, 223-24 (2020) (noting "clear and unmistakable" standard). Thus, the question of arbitrability "is an issue for judicial determination unless the parties have clearly and unmistakably provided otherwise." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (internal quotations omitted). The Supreme Court has labeled the "clear and unmistakable" language, a "gateway" question—"whether their agreement covers a particular controversy"—here, the question of who decides who decides arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (*citing Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). California courts agree and likewise hold that "a court is the appropriate entity to resolve challenges to a delegation clause nested in an arbitration clause." *Nielsen*, 22 Cal.App.5th at 1109.

Importantly, "where the matter in dispute is not whether a particular grievance falls within the scope of an arbitration agreement, but rather, who—court or arbitrator—is empowered to decide arbitrability, the presumption is 'reverse[d]' in favor of judicial, rather than arbitral, resolution." *Las Vegas v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 596 (9th Cir. 2018) (*citing First Options*, 514 U.S. at 945). The reason for this rule is simple: parties cannot be forced to arbitrate an issue they have not agreed to arbitrate. *First Options*, 514 U.S. at 945. The rule exists in part because delegation clauses "have the potential to create problems of circularity," and thus "the court must determine whether the delegation provision is enforceable before ordering the parties to arbitration." *Sargon Enterprises, Inc. v. Browne George Ross LLP*, 15 Cal.App.5th 749, 770 n.4 (2017) (*citing Rent-A-Center*, 561 U.S. at 69-70). This rule also makes sense because, if an arbitrator determines there is no delegation clause, that "finding would undermine the arbitrator's jurisdiction to make that finding in the first place." *Id*. Thus, the obvious solution to this potential for a gross waste of resources is to allow a court to resolve this issue first.

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER
*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

Here, in Zhang's first appearance in the arbitration, Zhang advised Dentons and the Emergency Arbitrator that he was disputing jurisdiction, and he specifically advised the Emergency Arbitrator on May 24, 2021—at the no-notice hearing on jurisdiction—that Zhang had initiated an action in California seeking a declaration that the parties have not agreed to delegate the questions of arbitrability by clear and unmistakable evidence.  (Exh. L, Tr. at 8.)  Rather than defer to the Superior Court or now this Court as required by the U.S. Supreme Court and related precedent, however, the Emergency Arbitrator summarily found in Dentons' favor.  (Exh. H.)  But because the delegation issue is reserved for a court to decide, the Emergency Arbitrator's decision on that issue was illegal, void, and issued in excess of his jurisdiction.  Accordingly, an immediate stay is warranted.  *See First Options*, 514 U.S. at 946 (noting party resisting arbitration can seek to enjoin it to allow a court to determine who decides arbitrability).

The U.S. Supreme Court's decision in *Henry Schein*, 139 S. Ct. at 527-28, further supports that conclusion.  In *Henry Schein*, the High Court held that there is no "wholly-groundless exception" to delegation clauses, even where a party invokes an arbitration clause frivolously to force the arbitrator and not a court to decide the threshold issue of arbitrability, and that a court's inquiry is limited to whether "there is clear and unmistakable evidence" that "the parties agreed to arbitrate arbitrability."  Notably, the Supreme Court remanded that issue to the lower court to "address that issue *in the first instance*."  *Id.* at 531 (emphasis added) (internal citations and quotations omitted).  Thus, *Henry Schein* reiterates that *the court in the first instance* decides the validity of the agreement to arbitrate arbitrability (*i.e.*, the enforceability of the delegation clause), *not* the arbitrator.

The Emergency Arbitrator's unlawful usurpation of the court's role not only warrants a stay, but also will require vacatur of the Awards.  Vacating these Awards is required even if the Emergency Arbitrator's conclusion is ultimately proven correct.  This is true because the Emergency Arbitrator was the wrong

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

decisionmaker, and therefore it does not matter if his decision was correct. *Cf.*
*Henry Schein*, 139 S. Ct. at 531 (reversing Fifth Circuit's decision on arbitrability
that was reserved for arbitrator without harmless error analysis). As the California
Court of Appeal explained in analyzing a closely-related issue, "the error in
permitting the arbitrator to decide whether appellant could be compelled to
arbitrate . . . is not subject to harmless error. Its effects are unmeasurable and defy
analysis by harmless-error standards." *Benaroya v. Willis*, 23 Cal.App.5th 464,
475 (2018) (reversing arbitrator's decision on alter-ego that was reserved for the
court and noting that the correctness of the arbitrator's decision was irrelevant)
(*citing Sandquist v. Lebo Automotive, Inc.*, 1 Cal.5th 233, 261 (2016) (the denial of
a party's right to the correct decision maker is "the sort of miscarriage of justice
that requires reversal without further harmless error analysis")).

The Emergency Arbitrator's decision on delegation must be vacated. He
was the wrong decisionmaker, and should have deferred to this Court. His failure
to do so is reversible error *per se*. As a consequence, not only should the Court
stay the arbitration, the Court should stay enforcement of the Awards pending
final resolution of this jurisdiction issue.

## 2. Labor Code Section 925 Prohibits a New York Arbitration.

Zhang is also likely to succeed on his objection to arbitrating in New York
because California law mandates that an "employer shall not require an employee
who primarily resides and works in California, as a condition of employment, to
agree to a provision that would . . . (1) Require the employee to adjudicate outside
of California a claim arising in California." Labor Code § 925. Zhang fits
squarely within Section 925.

*First*, while Zhang held the title of "partner," under California law, he is
considered an employee. At least in the context of FEHA claims such as those
asserted by Zhang for wrongful termination and racial discrimination, a power
imbalance is all that is necessary in order to trigger Zhang's rights as an employee

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

under the statute. In a closely analogous situation (though not involving Section 925), the Court of Appeal held that a partner at the law firm Winston & Strawn LLP could invoke the unconscionability protections afforded to "employees" under the California Supreme Court's decision in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000), because the partner asserted nonwaivable statutory claims under FEHA, was in an inferior bargaining position, and had no opportunity to negotiate the partnership agreement. *Ramos v. Superior Court*, 28 Cal.App.5th 1042, 1056 (2018). Notably, the court in *Ramos* found it "unnecessary to resolve the question of whether Ramos was an employee," and cautioned that it may be inappropriate to do so in determining arbitrability because it would constitute a substantive ruling barring Ramos's claims under the Labor Code (available only to employees). *Id.* at 1056 & n.6.

Alternatively, the Honorable Charles Breyer in the Northern District of California has indicated that, for purposes of Section 925 in the context of a motion to compel arbitration, a plaintiff satisfies the statute if he or she satisfies a "plausibility" standard—that is, the plaintiff pleads facts which, if taken as true, would establish the plaintiff as an employee under California law. *McKellar v. Mithril Capital Management, LLC*, 2020 U.S. Dist. LEXIS 44080, at \*20 (N.D. Cal. Mar. 13, 2020). At this stage, Zhang satisfies both approaches.

***Ramos* approach**: Zhang asserts a nonwaivable claim under Labor Code section 1102.5 as a whistleblower who was retaliated against for reporting suspected criminal activity. Just as the partner in *Ramos*, Zhang had virtually no bargaining power and was a "partner" in name only. For example, the Partnership Agreement was already adopted by hundreds of signatories and could not be altered without overwhelming consent from the partners. *See Ramos*, 28 Cal.App.5th at 1058 (Ramos could not negotiate "because the Partnership Agreement had been adopted by hundreds of capital partners before she joined"). Similarly, Zhang could be terminated from the partnership not by his partners or

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

through dissociation under the Business & Professions Code, but by a vote of the Dentons US Board (the "Board"). (Zhang Decl., ¶¶ 4-6; Exh. C at 4.6.[4])  The Board is a non-elected body that appoints its own members.  (Zhang Decl., ¶ 6; Exh. C at 6.2.1.)  *Compare Ramos*, 28 Cal.App.5th at 1057 (noting that Ramos could be expelled for any reason by two-thirds vote of capital partners and discussing management committee's powers).  Further, signing the Partnership Agreement was an absolute condition of employment at Dentons.  (Zhang Decl., ¶ 4.)  Based on this showing alone, Zhang has shown a likelihood of success on the issue of whether he should be considered an employee under Section 925.  (*See*, *generally*, Zhang Decl. at ¶¶ 4-11 (attesting to facts establishing his status as an employee under California law.)

*McKellar* **approach**:  In Zhang's FAC, he alleges that while he had the title of "partner," for purposes of California law, and he was treated as an employee, terminable at the whim of management.  (Exh. B, FAC ¶ 5.)  Zhang supports this allegation with numerous specific facts: (1) that he was in fact "terminated" by the Board (*id.*, ¶¶ 2, 29); (2) that the Contingency Fee underlying this dispute was owed directly to Dentons, not to Zhang (*id.*, ¶¶ 16, 17); (3) that Dentons' CEO, defendant Michael McNamara, asserted control over the "manner and means" of Zhang's work by overseeing the process of collecting the Contingency Fee, mandating that certain other Dentons employees be allowed to participate in that process, and ultimately circumventing Zhang completely through the use of the Forgery to collect the fee prematurely (*id.*, ¶¶ 20, 24, 26); and (4) initiating an arbitration against Zhang—on the very basis that Zhang did not appropriately subject himself to the control of McNamara, Edward Reich (Dentons' General Counsel), and Dentons' management in collecting the Contingency Fee, daring to negotiate his compensation instead of leaving it to the Board to decide, and

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

---

[4] The unsealed version of this document is part of Dentons' separately-filed sealing application.  (See Docket #4.)

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

sending work emails to Zhang's personal email account (*id.*¸¶ 30).  While the FAC is unverified, in Zhang's separately filed declaration, he testifies to the facts supporting these allegations.  (Zhang Decl., ¶¶ 3-11.)

*Second*, there is no material dispute that Zhang meets Section 925's other requirements.  Zhang resides in Los Angeles and worked at Dentons' Los Angeles office.  (*Id.* at ¶¶ 1, 2; *see* Labor Code § 925(a).)  The Partnership Agreement was modified or extended on January 27, 2020, which is on or after January 1, 2017 as required by section 925(f).  (Exh. C.)  Further, while the statute contains an exception for employees who are "in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum," (Labor Code § 925(e)), Zhang was not represented by counsel when he signed the Partnership Agreement.  (Zhang Decl., ¶ 5.)

Here, the Arbitration is proceeding in New York.  Yet the claims alleged in Zhang's FAC, and the alleged breaches of fiduciary duty alleged against him in the arbitration, are both "controversies arising in California" under Section 925(a)(1).  The current New York arbitration thus violates Section 925, the provision "requiring" Zhang to arbitrate in New York is void, and all action taken in that arbitration are null and void.  At a minimum, Zhang has established a likelihood of success on this issue as well.  *See Depuy Synthes Sales, Inc. v. Stryker Corp.*, 2020 U.S. Dist. LEXIS 199271, at *22-25 (C.D. Cal. Sep. 29, 2020) (enforcing Section 925 against New Jersey forum selection and choice-of-law clauses); *Pierman v. Stryker Corp.*, 2020 U.S. Dist. LEXIS 12971, at *7-9 (S.D. Cal. Jan. 23, 2020) (enforcing Section 925 in motion to transfer analysis).[5]

### 3. The Emergency Award Violates Zhang's Statutory and Constitutional Rights.

A further reason Zhang is likely to succeed on his request for a TRO is

---

[5] For the same reasons, Section 925 will also require the application of California law to this dispute.  *See* Cal. Lab. Code §§ 925(a)(2) & (b).

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

PRINTED ON RECYCLED PAPER

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

because Zhang's constitutional rights will be egregiously violated if the arbitration is not stayed.  This issue is discussed extensively in Second District's decision, *Sargon Enterprises, Inc. v. Browne George Ross LLP*, 15 Cal.App.5th 749 (2017).  In *Sargon*, the plaintiff filed a lawsuit for legal malpractice, and the defendant successfully moved to compel arbitration.  *Id.* at 758-59.  The defendant then asserted a breach of contract claim on the ground that the plaintiff's initial filing of the lawsuit in court breached the arbitration agreement—and the arbitrator agreed, awarding $200,000 in damages.  *Id.* at 759-60.  After an exhaustive analysis of the California Arbitration Act, its legislative history, and binding California authorities, the Court of Appeal vacated that award because it deprived the plaintiff of a statutory right: "namely, the right pursuant to the Act . . . to test *in court* the validity and enforceability of an arbitration agreement ***before submitting to arbitration***."  *Id.* at 770 (italics in original, bold emphasis added).

*Sargon* controls the outcome here.[6]  Zhang had an absolute right to petition the Superior Court and assert his whistleblower claims for wrongful termination.  Dentons' remedy is to "take active steps to secure that right, ***and is required to go to the court where the [other party]'s action [at law] lies***."  *Sargon*, 15 Cal.App.5th at 768 (alterations in original, emphasis added).  But it cannot circumvent that process altogether by asking a perceived friendly arbitrator to order Zhang to dismiss the case, and then try to enforce that ruling through an anti-suit injunction in another state (as Dentons tried to do in New York).

Further, and for the same reasons, the Emergency Award violates the First Amendment to the United Stated Constitution.  The First Amendment protects the right of the people "to petition the Government for a redress of grievance."  U.S. Const. amend. I.  *See also* Cal. Const. art. I, § 3(a).  It also severely restricts the

---

[6] Although Defendants have now removed to this Court, the Emergency Award was directed at a filing in the Los Angeles Superior Court, and therefore *Sargon* still controls whether Zhang had a right to petition *that* court.

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

government from dictating to its citizens "what to say and what not to say." *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988). The Constitution also requires a fair and reasonable process. After all, the perception of justice is at least as important as actual justice.

Here, the Emergency Arbitrator's awards and orders violate Zhang's rights. The Emergency Arbitrator is forcing Zhang to dismiss this case and attempting to dictate what Zhang must file in this case, all in the context of little or no-notice hearings, and without the benefit of any legal briefing. While the Emergency Arbitrator's actions separately confirm the unconscionability of the arbitration clause itself, that is an issue for another day. For purposes of this Application, his actions confirm that, unless this Court steps in and stays the arbitration, he will continue to meaningfully and irreparably stomp on Zhang's rights.

### 4.   **The Purported Delegation to an Arbitrator Fails for Lack of Definitiveness.**

While the issue of whether there is actually a delegation clause is not at issue in this Application for a TRO (because this Application concerns who should decide the issue in the first instance and not the merits), it does play a role in the ultimate issue of whether Zhang is entitled to declaratory relief. While Zhang will brief and argue this issue in the context of Dentons' anticipated petition to compel arbitration, Zhang previews some of his arguments below.[7] *See E. & J. Gallo*

---

[7] The Court will only reach the issue of unconscionability if it decides that the removal was proper and that there has been no enforceable delegation to an arbitrator to decide the arbitrability issue. Zhang expects that issue then to be resolved either by cross-motions for summary judgment on the related declaratory relief action, or on Dentons' anticipated petition to compel arbitration. However, assuming removal was proper, this Court will eventually reach the argument that the delegation clause is unconscionable, which Zhang reserves for now. Zhang notes that, contrary to both Defendants' past assertions and the Emergency Arbitrator's views, the Ninth Circuit has held repeatedly that the unconscionability analysis established by the California Supreme Court in *Armendariz* is not preempted by the FAA. *See Yeomans v. World In. Grp. Ins. Agency, Inc.*, 2021 U.S. Dist. LEXIS 52226, at *10-11 (N.D. Cal. Mar. 19, 2021) (collecting cases). Zhang further notes that the *Armendariz* analysis was recently (and successfully) applied by a Winston & Strawn "partner" to invalidate an arbitration

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*Winery v. Andina Licores, S.A.*, 446 F.3d 984, 990-91 (9th Cir. 2006) (seeker of anti-suit injunction need not show likelihood of success on the underlying merits).

As discussed above, courts will presume that they have authority to decide arbitrability unless there is a clear and unmistakable delegation of that authority to an arbitrator.  When the contract contains any material ambiguities and/or inconsistencies on who would rule on arbitrability, the proponent of arbitration cannot make the necessary showing by clear and unmistakable evidence.  Here, the Partnership Agreement and its attempt to incorporate arbitration service rules by reference creates numerous inconsistencies and ambiguities regarding whether signatories in Zhang's position "unmistakably" agreed that the issue of arbitrability was for an arbitrator and not a court.  When considering this issue, courts consider numerous factors, including the clarity of the delegation of issues between courts and arbitration.  The more potential ambiguities, the less likely the delegation will be deemed clear and unmistakable.

Here, the Partnership Agreement does not contain an express delegation clause.  Instead, it continuously bounces between courts and arbitrators deciding contract interpretation and enforceability issues, clearly contemplating actions in both venues.  As delegation is an issue of interpretation and enforceability under state law, these inconsistencies each undermine any clear and unmistakable intent to delegate.  For example (all in Exhibit C):

> **Section 12.5 – Litigation Expenses**.  "In the event that the Partnership or any party hereto ***shall bring any legal action***, arbitration, or other proceeding ***with respect to the breach, interpretation, or enforcement of this Agreement***, or with respect to any dispute relating to any matter covered by this Agreement, each party in such action, arbitration, or other proceeding shall" pay their own attorneys' fees.

provision on unconscionability grounds, and that Zhang intends to present similar arguments, aimed at both any delegation clause and the arbitration provision itself (if he gets there).  *See Ramos v. Superior Court*, 28 Cal.App.5th 1042 (2018).

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Here, by its own terms, the Partnership Agreement contemplates and addresses a "legal action" that is not an arbitration regarding the Partnership Agreement's "interpretation." Of course, whether the Partnership Agreement "clearly and unmistakably" manifests an intent to arbitrate arbitrability is a matter of contractual interpretation, and undermines the assertion that the parties have unmistakably agreed to arbitrate arbitrability.

**12.6 Illegality**. "In the event that any provision of this Agreement shall be adjudicated to be void, illegal, invalid, or unenforceable, the remaining terms and provisions of this Agreement shall not be affected thereby . . . ."

By using the term "*adjudicated*" instead of "arbitrated," which the Partnership Agreement specifically utilizes in other sections, the Partnership Agreement is ambiguous on who is intended to decide whether any provision of the Agreement is "void, illegal, invalid, or unenforceable," including who would decide such an attack directed at a purported delegation clause. *See Dennison v. Rosland Capital LLC*, 47 Cal.App.5th 204, 209-210 (where severance clause contemplated that a court may hold contractual provisions void, invalid, or unenforceable there is no clear and unmistakable intent to delegate).

**12.10.2 Authority of Arbitrator**: "The arbitrator shall have the power to provide some or all of the following relief: (i) an award ordering the breaching party to refrain from any further breach of this Agreement, (ii) an award of any and all damages as may be determined by such arbitrator, (iii) an award to one or more parties of the reimbursement of their expenses incurred in connection with the arbitration to be paid by one or more of the other parties, and/or (iv) any other relief or remedy in equity or at law as may be appropriate."

This section does not mention any authority to determine the arbitrability of a dispute, which it easily could have included. By not including that issue here, it implies that the arbitrator did *not* have that authority.

**12.10.3 Confidentiality**: "All complaints, petitions, actions, or motions or other documents filed in any federal or state court in connection with the ***enforcement, interpretation or breach*** of any provision of this Agreement must be filed under seal." (Emphasis added.)

PRINTED ON RECYCLED PAPER

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Again, this section contemplates pleadings and other documents filed in court regarding the "interpretation" of "any provision" of this Agreement. This would be highly inconsistent with an intent that the parties agreed to arbitrate arbitrability, which calls for the "interpretation" of the Partnership Agreement.

> **12.10 Dispute Resolution**: "the arbitrator shall have *no power or authority to add to, amend, modify or disregard any of the provisions of this Agreement*."

This section effectively prohibits the arbitrator from disregarding a delegation clause, even if the arbitrator finds there was no clear and unmistakable intent to delegate.

> **12.10 Dispute Resolution**: "all disputes relating to the validity, breach, interpretation or enforcement of this Agreement . . . shall be resolved in accordance with the CPR Rules of Non-Administered Arbitration *then currently in effect*." (emphasis added).

This attempt to incorporate rules fails for lack of definitiveness because it does not clearly identify any set of ascertainable rules that existed on the date of *execution*. To incorporate a set of rules, the actual rules must be "readily available" to the signer. As of the date Zhang signed the Partnership Agreement, there was no possible way that Zhang could "unmistakably" know what the rules might later become. For example, CPR could unilaterally change its rules based on the constantly evolving Supreme Court precedent on this issue. Or CPR could have gone bankrupt the day after this Partnership Agreement was signed, which would mean there was no rule "then" in effect. This is also an easily resolvable ambiguity. What Dentons easily could have done is identified a particular set of rules *in effect on the date of signing*.

That is exactly what the California Practice Guide advises: "When incorporation provider rules, specify *which version* is incorporated. For example, a clause in the parties' operating agreement designating the rules of AAA 'existing at the date hereof.'" H. Knight, Alternative Dispute Resolution, Practice Pointer, 5:214.4d at 5.249 (2019) (emphasis in original) (citing *Gilbert Street Developers*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*LLC v. La Quinta Homes, LLC*, 174 Cal.App.4th 1185, 1187 (2009)).  "To go beyond the incorporation of an existent rule and allow for the incorporation of a rule that might not even come into existence in the future, however, contravenes the clear and unmistakable rule." *Gilbert Street*, 174 Cal.App.4th at 1193.

But Dentons wanted the benefit of future changes.  By attempting to capture that benefit, it irrevocably made this provision "mistakable."  While it is true that the rules in effect at the time of execution did *then* have a delegation clause, the Partnership Agreement focuses on the rules in effect at the time of arbitration— *not* at the time of execution.  Dentons' willingness to accept changing rules without thought or analysis, along with the presumption that courts will decide the issue of arbitrability, further undermines a clear and unmistakable intent to delegate.

> **12.10.1 Determination by the DUS Board**: "All issues and disputes relating to *the construction and interpretation of this Agreement* . . . shall be determined by the DUS Board, and such determination shall be final and binding on all of the Parties unless such determination is made in bad faith or without reasonable basis.  In the event that any arbitration *or legal proceeding* is brought with respect to any matter determined by the DUS Board, the issue or issues to be resolved in such arbitration or other proceeding shall be limited to determining whether the DUS Board acted in bad faith or without reasonable basis." (emphasis added).

This clause is critical for several reasons.  *First*, it manifests an intent to delegate arbitrability to the Board, not the arbitrator.  More ambiguity.  *Second*, it limits the arbitrator's ability to review that determination.  *Third*, the clause contemplates a "legal proceeding" as an alternative to an arbitration for challenging the DUS Board's determination.  All of this undermines any "clear and unmistakable" intent to delegate arbitrability to an arbitrator.

While Zhang does not believe this Court need or should rule on the clear and unmistakable issue now—and that the issue will ultimately be resolved by the IC Court as part of the petition to compel arbitration—Zhang provides these details now to show that this is a live and hotly contested issue, and one which

**PRINTED ON RECYCLED PAPER**

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Zhang ultimately expects to win.

**B.      Absent Immediate Relief, Zhang Is Highly Likely To Suffer Irreparable Harm.**

Absent a TRO and then a preliminary injunction, Zhang will suffer or is highly likely to suffer irreparable injury in at least the following ways: (1) Zhang will be deprived of his right under binding U.S. Supreme Court precedent to have a court determine in the first instance whether the parties have clearly and unmistakably agreed to arbitrate arbitrability; (2) Zhang will be forced to participate in an arbitration, and perhaps further emergency measures, without having a court first resolve the gateway issue of whether a valid delegation clause exists; (3) the Emergency Arbitrator will continue to run roughshod over Zhang and California courts (for example, on June 2, 2021, at Dentons' invitation, the Emergency Arbitrator rushed to finalize his jurisdiction ruling so that the ruling would be final before Zhang's then scheduled TRO hearing (Exhs. AA, BB, CC, DD); and on June 8, 2021, Dentons again invited the Emergency Arbitrator to proceed to rule on Dentons' application for emergency relief despite knowing that Zhang was again seeking a TRO (Exhs. GG)); (4) Zhang will be subject to the Awards, and the mandate that Zhang dismiss this very case, which violates Zhang's statutory and Constitutional right of petition, the violation of which is irreparable harm *per se*; (5) Zhang will be subject to the Emergency Award's mandate the Zhang take all efforts to remove all references of this case from the records and registry of the Superior Court, despite its impossibility; and (6) Zhang may be subjected to sanctions and contempt for violating the Emergency Award. There is no monetary award that can compensate Zhang for these harms.

**C.      The Balance of Equities Tilts Sharply in Zhang's Favor.**

Zhang is entitled to have a court determine whether a valid delegation clause exists.  The deprivation of that right will cause immeasurable harm and force him to participate in an arbitration located in New York where he contends

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

there is no enforceable agreement to arbitrate.  Zhang will then have to wait until *after* the arbitration to vacate the Final Award(s) on the grounds that there was no clear and unmistakable intent to delegate arbitrability, or that the New York arbitration (and application of Delaware law) was illegal under Labor Code section 925.  That, alone, is hardship.  On the other hand, Dentons will not suffer any harm if this Application is granted.  It still will have the right to advocate for its position in a hearing on the merits, and if it wins, will be able to proceed with arbitration against Zhang, whether in New York or in California (depending on Section 925).  Further, despite the legal skirmishes to date, Zhang has not—and Dentons has no evidence of—any attempt by Zhang to disclose any confidential information.  Thus, the *status quo* will be maintained—albeit without the ability to further unleash the Emergency Arbitrator on Zhang pending.

For these reasons, the Court should not require Zhang to post a bond, either.  There is no Code requirement that an undertaking be ordered in conjunction with a TRO.  As discussed above, California and federal authorities are in accord that a court must determine the issue of arbitrability, and Zhang has affirmatively sought a declaration on that issue in his FAC.  Therefore, there is no risk that this Application is submitted for any improper purpose.

**D.    A TRO Is In The Public Interest.**

The public interest factor strongly favors issuing a TRO.  As discussed throughout this Application, when the parties dispute whether there is a clear and unmistakable intent to arbitrate arbitrability, the Court must determine the issue.  By granting the requested provisional relief and protecting the Court's ability to make that determination, the Court will protect the public's interest in ensuring that issues of law reserved for the public courts are adjudicated in that forum.

Similarly, it is also in the public interest to ensure that people are not forced into private and confidential arbitrations when they are not legally required to do so—especially where deferring that determination to the back end would force

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S APPLICATION FOR TRO AND OSC*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

parties to expend significant resources.  If a party like Zhang prevails on the back end (in a petition to vacate an award) the victory is pyrrhic because of the time, money, and energy wasted.

Finally, it is in the public interest to deter the strategy employed by Dentons here: to keep misconduct private through a grossly overbroad contractual confidentiality provision and preemptively initiating an arbitration.  Unless the Court enjoins this tactic upfront, it will become standard practice for employers worried about potential employment lawsuits, who will rush to empower arbitrators to issue "emergency" rulings before the courts can act. Further, this tactic would help Dentons and other defendants commit crimes and other despicable conduct, but can screen that misconduct from the public eye.  Such an outcome clearly violates public policy.  When it comes to misconduct such as that alleged here, the public has the right to know—not only of the facts, but that a Court of competent jurisdiction considered the clear and unmistakable issue before sending the matter to arbitration.

## IV.  CONCLUSION

Zhang respectfully requests that this Court issue a temporary restraining order against Defendants as requested in the Ex Parte Application and an Order to Show Cause why a preliminary injunction should not issue.  This outcome is fair, measured, and properly preserves the *status quo* until these important issues can be fully briefed and addressed.

Respectfully submitted,

DATED:  June 9, 2021          MURPHY ROSEN LLP

By: /s/ Paul D. Murphy
    Paul D. Murphy
    Daniel N. Csillag
    Attorneys for Plaintiff
    Jinshu "John" Zhang

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

## CERTIFICATE OF SERVICE - CM/ECF

I, **LESLIE MAYTORENA**, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to this action.  My business address is 100 Wilshire Boulevard, Suite 1300, Santa Monica, California 90401-1142, (310) 899-3300.

On June 9, 2021**, PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by electronically filling the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Patrick M. Collins
Patrick M. Otlewski
**KING & SPALDING LLP**
110 North Wacker, Suite 3800
Chicago, IL 60606
*pcollins@kslaw.com*
*potlewski@kslaw.com*

Brian A. White
**KING & SPALDING LLP**
1180 Peachtree St. NE, Suite 1600
Atlanta, GA 30309
*bwhite@kslaw.com*

Joseph N. Akrotirianakis
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
*iakro@kslaw.com*

Executed on **June 9, 2021**, at Santa Monica, California.

**LESLIE MAYTORENA**

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S EX PARTE APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION*