JOSEPH N. AKROTIRIANAKIS (State Bar No. 197971)
*jakro@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:  +1 213 443 4355
Facsimile:   +1 213 443 4310

Attorneys for Defendants DENTONS US LLP,
MICHAEL T. MCNAMARA, and EDWARD J. REICH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINSHU "JOHN" ZHANG, | Case No. 2:21-cv-04682-RGK-JC |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| DENTONS U.S. LLP; MICHAEL T. MCNAMARA; EDWARD J. REICH; and DOES 1 through 50, | |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................. 2

    A.    The Underlying Dispute............................................................ 2

    B.    The Arbitration Proceedings .................................................... 3

    C.    Plaintiff's Requested Relief ...................................................... 6

III.  ARGUMENT .................................................................................. 6

    A.    Zhang Has No Emergency Justifying His Requested Relief. .............. 6

    B.    The Arbitrator Should Decide Arbitrability in the First
           Instance, Not a Court. ............................................................... 9

    C.    Zhang's Reliance on California Law Is Misplaced. ........................ 12

    D.    The Risk of Irreparable Harm and Balance of Hardships
           Favor Dentons. ........................................................................ 13

    E.    California Labor Code Section 925 Does Not Apply. ...................... 14

    F.    The Arbitrator's Emergency Award Does Not Violate
           Zhang's Rights. ....................................................................... 16

    G.    Should This Court Grant Plaintiff's TRO, Plaintiff Must
           Post a Bond. ............................................................................ 16

IV.   CONCLUSION ............................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................ 15

*First Options v. Kaplan*,
   514 U.S. 938 (1995) ................................................................. 9, 11, 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ..................................................................... 11

*In re Intermagnetics Am., Inc.*,
   101 B.R. 191 (C.D. Cal. 1989) ......................................................... 7, 8

*Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*,
   861 F.2d 420 (4th Cir. 1988) ............................................................ 14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) ......................................................................... 12

*McKellar v. Mithril Capital*,
   2020 U.S. Dist. LEXIS 44080 (N.D. Cal. Mar. 13, 2020) .................... 16

*Mission Power Engineering Co. v. Continental Casualty Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) .............................................. 2, 7, 8

*Monster Energy Co. v. City Beverages*,
   No. 5:17-CV-00295-RGK-KK, 2021 WL 650275 (C.D. Cal. Feb.
   17, 2021) ...................................................................................... 13

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
   230 F. Supp. 3d 1161 (C.D. Cal. 2017) ............................................. 16

*Mortillaro v. Dentons US LLP*,
   No. 2:19-cv-04103 VAP SS, slip op. (C.D. Cal. July 25, 2019) ............. 9

*Myriad v. Oracle*,
   724 F.3d 1069 (9th Cir. 2013) ................................................. 1, 10, 12

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*,
   22 Cal.App.5th 1096 (2018) .............................................................. 13

*Perry v. Thomas*,
  482 U.S. 483 (1987) .......................................................................... 15

*Preston v. Ferrer*,
  552 U.S. 346 (2008) ............................................................... 12, 14, 15

*Ramos v. Superior Court*,
  28 Cal.App.5th 1042 (2018) ......................................................... 15, 16

*Reliance Nat. Ins. Co. v. Seismic Risk Ins. Servs., Inc.*,
  962 F.Supp. 385 (S.D.N.Y. 1997) ....................................................... 14

*S&ME, Inc. v. STV Inc.*,
  No. 3:19-CV-03567-JFA, 2020 WL 4700643 .................................... 10

*Sargon Enterprises, Inc. v. Browne George Ross LLP*,
  15 Cal.App.5th 749 (2017) ........................................................... 13, 16

*Schneider v. Kingdom of Thailand*,
  688 F.3d 68 (2d Cir. 2012) .................................................................. 11

*Southland v. Keating*,
  465 U.S. 1 (1984) ......................................................................... 12, 15

*Worldwide Film Productions, LLC, v. JPMorgan Chase Bank, N.A., et al.*,
  No. CV1910337DSFJPRX, 2020 WL 2730926 (C.D. Cal. Mar. 13,
  2020) ................................................................................................... 10

**Statutes**

9 U.S.C. § 3 ............................................................................... 13, 14

California Labor Code § 229 ....................................................... 15

California Labor Code § 925 .................................................. 14, 15

Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) .......................... 2, 12

**Other Authorities**

AAA Rule 1(a) ............................................................................... 12

American Arbitration Association, Commercial Arbitration and
    Mediation Procedures,
    https://www.adr.org/sites/default/files/CommercialRules_Web-
    Final.pdf (date accessed, June 10, 2021) ........................................... 12

Local Rule 7-19.1 ....................................................................................... 7

CPR Rule 1.1 ............................................................................................ 12

CPR Rule 8 ............................................................................................... 10

CPR Rule 8.1 ............................................................................................ 10

CPR Rule 9.5 ............................................................................................ 14

Federal Rule of Civil Procedure 65 ......................................................... 16

DEFENDANT'S RESPONSE TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO

## I.    INTRODUCTION

Plaintiff Jinshu "John" Zhang has no emergency and no likelihood of success while the balance of harms tilts against issuance of a TRO.  Zhang's TRO, like his underlying lawsuit, is simply an effort to avoid an arbitration to which Zhang previously agreed, and in which Zhang participated, but he then chose to abruptly withdraw after receiving an adverse ruling. Of course, nothing precludes Zhang from challenging the results of the arbitration once it has concluded should he so desire. The Court should recognize Zhang's application for what it is: an improper attempt to interfere with the arbitral process when it does not go his way.

Defendant Dentons US LLP ("Dentons") terminated Zhang as a Full Interest Partner (*i.e.*, full equity partner) on May 5, 2021, because he breached the Dentons Partnership Agreement (the "Partnership Agreement") and his fiduciary duties to the law firm by attempting to cause a firm client (the "Client") to pay the bulk of an earned contingency fee directly to Zhang, not Dentons.  Dentons commenced the pending arbitration against Zhang that same day under the International Center for Conflict Prevention and Resolution's ("CPR") non-administered rules (the "CPR Rules") pursuant to the Parties' arbitration agreement.  Dentons then filed a Request for Emergency Measures of Protection by an Emergency Arbitrator, who has authority to rule on jurisdiction to avoid needless court intervention.

It is black-letter law that such a delegation provision is effective to remove arbitrability questions from the jurisdiction of the courts and to require the Parties to arbitrate arbitrability. *Myriad v. Oracle,* 724 F.3d 1069 (9th Cir. 2013). Zhang sought to delay the Emergency Arbitrator's ruling while Zhang attempted to relitigate settled law. Because the Parties clearly and unmistakably agreed to arbitrate arbitrability by adopting the CPR Rules, Zhang has no prospect of success with his challenge to the Emergency Arbitrator's Jurisdiction Award.

Zhang has manufactured an emergency for this Court where none exists, and

his efforts at unwinding the arbitration proceedings should be rejected. Plainly there is no urgency. The final step in the Emergency Arbitration process will be for the Emergency Arbitrator to rule on Dentons' Emergency Motion. If the Emergency Arbitrator rules in Dentons' favor, Zhang can later challenge that award in court. Thus, there is no need for a TRO designed to prevent that ruling, and certainly no basis under the Local Rules, this Court's standing procedures, and *Mission Power* for Zhang to apply for emergency relief.

Similarly, Zhang's inflammatory rhetoric is baseless. The Emergency Arbitrator fully respected Zhang's due process rights.  Zhang had ample written notice before each hearing. When one of Zhang's lawyers had a family issue, Zhang received an extension of the briefing schedule by the Emergency Arbitrator before ruling on jurisdiction. (Notably, Zhang glosses over the fact that his counsel's family issue did not delay Zhang from filing his state court action the next day.) Furthermore, the only party engaged in forum shopping is Zhang. After Zhang participated in the arbitration, including by challenging the jurisdiction of the Emergency Arbitrator, Zhang filed this lawsuit in the Superior Court of California, Los Angeles County. Defendants' removal is entirely appropriate under the law, and Zhang knows that, having himself worked on the international matter that is the focus of this dispute.[1]

## II.     BACKGROUND[2]

### A.     The Underlying Dispute

Beginning in 2018 and continuing into 2020, Dentons represented the Client, which is based in the People's Republic of China, in proceedings to enforce a foreign

---

[1] There is no merit to Zhang's suggestion of a bad faith motive for removal. Zhang cannot profess surprise at the issue of federal subject matter jurisdiction and the Federal Arbitration Act given his familiarity with the arbitration rules from his earlier enforcement of an international arbitration award. Zhang also knows that Dentons earlier sought relief from the Southern District of New York (which Defendants acknowledged in the Declaration in Support of the Application to Seal, ECF 5, contrary to Zhang's allegation).

[2] The facts set forth in this Background are taken from the Declaration of Brian A. White, dated June 10, 2021, attached hereto, the Notice of Removal and

arbitral award issued in China in an arbitration under the Rules of the China International Economic and Trade Arbitration Commission ("CIETAC"). That representation culminated in a multi-million-dollar settlement for the Client. Under the contingency fee terms as set forth in the Engagement Agreement between Dentons and the Client, and the underlying settlement, Dentons is entitled to, *inter alia*, shares of stock in a corporation organized and existing pursuant to the laws of the Cayman Islands. Title of the shares of stock is currently held by a Seychelles company, which is an affiliate of the Client.

Rather than arrange for Dentons to receive its contingency fee, Zhang demanded that Dentons first guarantee that he, individually, would receive the lion's share of the proceeds that Dentons is entitled to receive from the Client under their contingency fee agreement, set forth in a written Engagement Letter between Dentons and the Client. When Dentons' leadership declined Zhang's efforts to take the contingency fee award for himself, Zhang went to the Client behind Dentons' back and negotiated directly with the Client to receive 85% of the proceeds due to Dentons. In doing so, Zhang breached both the Dentons Partnership Agreement and his fiduciary duties to Dentons. When Dentons challenged Zhang on his self-dealing conduct, Zhang made false and slanderous allegations against Dentons' leadership. Then, shortly before his termination, and unbeknownst to Dentons, Zhang exfiltrated sensitive and confidential information.

### B.     The Arbitration Proceedings

On May 5, 2021, Dentons commenced arbitration with Zhang pursuant to the Parties' agreement to arbitrate as set forth in the Partnership Agreement that Zhang signed and executed every year he was a Partner, including 2021. After commencing arbitration, Dentons sought interim emergency measures of relief from a duly appointed Emergency Arbitrator to protect its interests in the contingency fee award and in confidential documents belonging to Dentons and its clients. Zhang and accompanying exhibits, and Motion to Seal with accompanying exhibits.

Dentons were both represented by counsel in the arbitration proceedings. Zhang's counsel participated in both hearings and Zhang himself attended one of the hearings (participating remotely via Zoom).

Under the CPR Rules, the Emergency Arbitrator serves until the regular arbitrator (or "Tribunal") is appointed. The purpose of the Emergency Arbitrator Rule is to enable a Party to an arbitration agreement to obtain urgent relief in arbitration before the Tribunal can be appointed—without having to go through a gatekeeping court first.

Zhang objected to the Emergency Arbitrator's jurisdiction in writing to the Emergency Arbitrator via email dated May 21, 2021. The Emergency Arbitrator responded appropriately to ensure that (1) Zhang would have an opportunity for a hearing on his objection to jurisdiction, but (2) that objection would not interfere with a ruling on Dentons' requested emergency relief. The Emergency Arbitrator then gave notice to the Parties that he scheduled a hearing to take place three days later on May 24, 2021—ample time for Zhang to prepare—with an invitation (not demand) for simultaneous briefing by the Parties in advance of the hearing. When the Emergency Arbitrator learned that one of Zhang's lawyers had family members in an accident, the Emergency Arbitrator suspended the briefing schedule and agreed to give Zhang additional time to brief the challenge before any ruling.

While Zhang's lawyers claimed the May 22, 2021 accident prevented them from preparing for the Emergency Arbitrator's hearing, they somehow managed to draft and file Zhang's Complaint (the "Original Complaint") in State Court the following day, May 23, 2021, under the caption *Zhang v. Dentons U.S. LLP, et al.*, Case No. 21STCV19442. This was more than two weeks after arbitration began.

During a hearing on May 24, 2021, the Emergency Arbitrator heard lengthy argument from Zhang on the issue of jurisdiction. The Parties agreed to a standstill in the State Court Action until the Emergency Arbitrator could rule on the scope of his jurisdiction. The Emergency Arbitrator ordered the Parties to abide by the

standstill, and to meet and confer concerning the language of undertakings that Zhang would give to memorialize the standstill. The Emergency Arbitrator provisionally scheduled a hearing to take place the following afternoon.

The Parties were unable to agree on language for the order. Thus, on May 25, 2021, Dentons sought additional interim emergency measures from the Emergency Arbitrator in the form of an anti-suit injunction. The Emergency Arbitrator held a hearing, attended by counsel for both Dentons and Zhang. At the conclusion of the hearing, the Emergency Arbitrator issued an oral order granting the relief requested by Dentons. The Emergency Arbitrator gave Zhang an opportunity to file a brief seeking withdrawal of the order; otherwise, the Emergency Arbitrator would issue the injunction in the form of an award. Instead of filing a brief as directed, Zhang announced that he was pulling out of the arbitration.  On May 26, 2021, the Emergency Arbitrator issued an Emergency Award (later corrected to address clerical errors) directing Zhang to dismiss the California State Court Action without prejudice.

On May 27, 2021, Zhang notified Dentons that, rather than comply with the Emergency Award, Zhang filed his First Amended Complaint (the "FAC") in the Superior Court of the State of California for the County of Los Angeles, Central District the day before (May 26, 2021). Zhang's FAC attacks the legitimacy of the arbitration proceedings in which he participated, the Emergency Arbitrator's jurisdiction, and the Emergency Award. That attack is inappropriate because (1) the Parties clearly and unmistakably agreed to arbitrate arbitrability such that the arbitrators and not the Court are empowered to decide any challenge to the arbitrators' jurisdiction, and (2) Zhang has waived his right to raise any such challenge to the Tribunal's jurisdiction. Nevertheless, among other things in the FAC, Zhang seeks a declaratory judgment that (a) the arbitration agreement "is unenforceable, unconscionable, void, voidable, violative of California public policy, and/or illegal under applicable law"; (b) "the issue of arbitrability must be resolved

by a court"; and (c) the Emergency Award should be vacated. FAC ¶¶ 68-70. Plaintiff's FAC also alleges retaliation, wrongful termination, racial discrimination, and intentional infliction of emotional distress.

On June 1, 2021, Zhang sought a TRO, Order to Show Cause, and Preliminary Injunction in State Court. On June 2, 2021, the Emergency Arbitrator issued the award on jurisdiction (the "Jurisdiction Award"). The Jurisdiction Award concludes that the Emergency Arbitrator has "arbitral jurisdiction to decide [Dentons'] original emergency measures application" and rejects Zhang's challenges to the validity of the arbitration agreement. Later on June 2, 2021, the State Court held an initial hearing on Zhang's TRO, without deciding the merits and instead requiring the Parties to meet and confer regarding sealing. Zhang voluntarily withdrew his TRO application from the docket during the hearing.

On June 8, 2021, Dentons filed a Notice of Removal in this Court. (Doc. 1). Dentons concurrently filed an Application for Leave to file portions of exhibits to the State Court Complaint under seal.  (Doc. 4).

### C.    Plaintiff's Requested Relief

On June 9, 2021, Plaintiff filed an *ex parte* application with this Court for a temporary restraining order, and an order to show cause why a preliminary injunction should not issue on the question of arbitrability. Zhang wants this Court to conclude that a court—not the arbitrator—should determine arbitrability of claims. Zhang's requested relief on an expedited and *ex parte* basis is inappropriate. He had a full opportunity to resolve this question in arbitration before he abruptly withdrew from those proceedings following an adverse ruling.

## III.    ARGUMENT

### A.    Zhang Has No Emergency Justifying His Requested Relief.

This District's local rules place strict limits on *ex parte* applications. This is because *ex parte* applications long ago "reached epidemic proportions in the Central District." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192 (C.D. Cal. 1989)

(Rymer, J.). That epidemic "pose[d] a threat to the adversary system" by undermining the rule "that *noticed* motions should be the rule and not the exception." *Id.* at 192-93. This Court's rules thus "discourage[]" *ex parte* applications, which "are nearly always improper." *Id.* As Your Honor has indicated, "[e]x parte applications are ONLY for extraordinary relief. Sanctions may be imposed for misuse of ex parte applications. *See Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)."

Zhang's application does not comply with those rules, nor does he comply with *Mission*. Most notably, Local Rule 7-19.1 required Zhang "to make reasonable, good faith efforts *orally* to advise counsel for all parties, if known, of the date and substance of the proposed *ex parte* application." L.R. 7-19.1 (emphasis added). Zhang blatantly violated the rule. Zhang did not orally or telephonically inform Defendants of the *ex parte* motion before filing it. Opposing counsel's declaration engages in misdirection on this issue. In a section titled "Notice to Counsel for Defendants," counsel provided contact information for Defendants' counsel, but did not indicate any good faith effort to contact counsel prior to filing. Instead, counsel stated, "We will separately notify defendants' counsel of this rule in email…which we will send immediately *after our filing is complete*." Murphy Decl. ¶ 3 (emphasis supplied). This does not satisfy the Local Rule. Zhang also failed to provide his pleadings in two parts, as required by *Mission*, with one part making clear why the regular noticed motion procedures must be bypassed. Zhang has simply failed to demonstrate why regular motion practices could not be followed. Zhang camouflages the weakness of his argument for emergency relief by mixing it with the merits, which is simply inappropriate to do.

Even if Zhang had complied with the Local Rules and *Mission*, "mere technical compliance with the filing requirements of the Local Rules is not enough to justify an *ex parte* application." *In re Intermagnetics Am.*, 101 B.R. at 192 n.1. There are only three proper bases "for legitimate *ex parte* applications," and Zhang's

application presents none of them. *Id.* at 193. Zhang does not claim "that notice to an opposing party will result in that party's flight, destruction of evidence, or secretion of assets." *Id.* Zhang does not "seek[] a routine order (*e.g.*, to file an overlong brief or to shorten the time within which a motion may be brought)." *Id.* at 194. Instead, Zhang improperly presents "the substance of the motion itself," *id.*, by arguing at length about the merits of the underlying dispute. While the application claims urgency requiring *ex parte* relief, any claimed urgency is a result of Zhang's own actions that do not warrant emergency relief.

Zhang's application presents all the "evils" posed by improper *ex parte* applications. *In re Intermagnetics Am.*, 101 B.R. at 193; *see also Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490–92 (C.D. Cal. 1995). His application has a "compendium" of 3 declarations and dozens of exhibits spanning 419 pages, giving Defendants just 24 hours to respond. The Court and its staff must also now work in haste to rule on Plaintiff's application. This "impose[s] an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure." *In re Intermagnetics Am.*, 101 B.R. at 193.

Worst of all, none of the burdens created by Zhang's application were necessary. Had Zhang made proper arguments in the arbitration that he participated in fully, or properly sought judicial review of the arbitral award, he would not now be rushing into court. This self-imposed emergency does not justify *ex parte* relief. As Judge Rymer observed for this Court more than 30 years ago, "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have." *In re Intermagnetics Am.*, 101 B.R. at 193.

Zhang's invocation of *ex parte* relief is inappropriate. Defendants respectfully submit that his abuse of the *ex parte* process should be rejected out of hand.

**B.**    **The Arbitrator Should Decide Arbitrability in the First Instance, Not a Court.**

There is no merit to Zhang's argument that a court—rather than the arbitrator—should determine arbitrability. The answer to that question is clear: the arbitrator has power to decide arbitrability.

Section 12.10 of the Dentons Partnership Agreement (the "Arbitration Agreement") is a broad-form arbitration agreement that requires Dentons and Zhang to arbitrate "***all disputes*** relating to the validity, breach, interpretation or enforcement of this Agreement, as well as all ***disputes of any kind*** between or among any of the Partners and/or the Partnership relating to the Partnership and/or the Business, including statutory claims of any kind, ***shall be resolved*** in accordance with the CPR Rules of Non-Administered Arbitration then currently in effect, by a sole arbitrator provided that the arbitrator shall have no power or authority to add to, amend, modify or disregard any of the provisions of this Agreement and that the arbitrator shall be required to follow applicable law." Exhibit 2 to Declaration in Support of the Application to Seal, ECF 5-2. In a case involving a provision nearly identical to the provision at issue here, Chief District Judge Virginia A. Phillips compelled arbitration, concluding that the contract was enforceable. *See Mortillaro v. Dentons US LLP*, No. 2:19-cv-04103 VAP SS, slip op. (C.D. Cal. July 25, 2019).

Zhang and Dentons clearly and unmistakably agreed to arbitrate threshold issues of jurisdiction, often referred to as "arbitrability." The United States Supreme Court has held that "the question of who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. "Did the parties agree to submit the arbitrability question itself to arbitration?" *First Options v. Kaplan*, 514 U.S. 938, 943 (1995) (cleaned up). If the parties "clearly and unmistakably" agree that the arbitrators should decide their own jurisdiction, then arbitrators—not the courts—have the authority to adjudicate the issue. *Id.* at 944 (cleaned up). Here, the Parties clearly and unmistakably agreed to arbitrate

arbitrability by incorporating the CPR Rules into their arbitration agreement because the CPR Rules include a standard delegation provision stating that the Emergency Arbitrator has the authority to rule on his or her own jurisdiction.

A leading case on the effect of the incorporation of institutional rules that include delegation provisions is *Oracle America v. Myriad Group, A.G.*, where the Ninth Circuit found that the arbitration rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules") clearly and unmistakably require that the arbitrator, and not the Court, must decide arbitrability because the UNCITRAL Rules are substantively the same as the AAA Rules and: "Virtually every circuit . . . has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." 724 F.3d 1069 (9th Cir. 2013).

Here, CPR Rule 8.1 is analogous to the AAA Rule at issue in *Oracle*: "The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. This authority extends to jurisdictional challenges with respect to both the subject matter of the dispute and the parties to the arbitration." Courts have held that CPR Rule 8 is a valid delegation provision. *See, e.g., S&ME, Inc. v. STV Inc.*, No. 3:19-CV-03567-JFA, 2020 WL 4700643, at *10 (D.S.C. July 22, 2020 ("[T]he CPR rules incorporated into the Prime Agreement show a clear and unmistakable intent of the parties to delegate the gateway issue of arbitrability to an arbitrator."). This means that the Parties clearly and unmistakably agreed to arbitrate arbitrability, including the competence-competence issue itself. *See, e.g., Worldwide Film Productions, LLC, v. JPMorgan Chase Bank, N.A., et al.*, No. CV1910337DSFJPRX, 2020 WL 2730926, at *3 (C.D. Cal. Mar. 13, 2020) (incorporation of JAMS rules constituted clear and unmistakable evidence of parties' intent to arbitrate arbitrability). As a result, the Emergency Arbitrator properly ruled on the extent of his own jurisdiction.

The case law that Zhang has cited does not stand for the proposition he advances. Zhang cites *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), to say that a court should decide the gateway decision of arbitrability. That is not true. The arbitrator in *First Options* decided arbitrability. The question for the Supreme Court was the appropriate standard of review once that decision was challenged in court. The Supreme Court held that de novo review was appropriate— after the fact—because the parties had not agreed to arbitrate arbitrability. Moreover, there, First Options argued that Kaplan had waived its right to *de novo* review by participating in the arbitration rather than seeking a ruling on arbitrability from a court. The Supreme Court rejected that argument and endorsed the practice of obtaining an arbitral award and then challenging it later in court.

The Supreme Court has not addressed what happens when the parties have agreed to arbitrate arbitrability and the award is later challenged, but the Courts of Appeal have. A leading case is the Second Circuit's decision in *Schneider v. Kingdom of Thailand*, 688 F.3d 68 (2d Cir. 2012). There, the Second Circuit held that the merits of an arbitrator's ruling pursuant to a delegation provision is not subject to judicial review. *Id.* at 74. That decision did not hold, as Zhang suggests, that the award should be vacated because the arbitrators did not first obtain permission from a court to issue a ruling on their own jurisdiction.

Zhang next cites *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), for the proposition that a lower court should address "who decides who decides" "in the first instance." That is selective quoting by Zhang. The issue in *Henry Schein* was that the court below (the Fifth Circuit) did not address the validity of the delegation provision, but instead had assumed that the provision was valid. The Supreme Court remanded for the Fifth Circuit to rule on that issue in the first instance; the Court did not hold that the Fifth Circuit must rule on that issue prior to an arbitral ruling.

Finally, there is no merit to Zhang's suggestion that the delegation provision

is not "clear and unmistakable" because the arbitration agreement contemplates that the CPR Rules may be updated. There is no authority to support that position, and Zhang has not shown that any applicable rule change occurred. Arbitration clauses frequently specify that the applicable rules will be those in effect at the time the arbitration is commenced. As in *Oracle*, 724 F.3d 1069, where the Ninth Circuit held the AAA Rules have a valid delegation provision, AAA Rule 1(a) states that the "rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration."[3] Rule 1.1 of the CPR Rules says substantially the same thing.  If Zhang's position were correct, incorporation of arbitral rules would never be a valid delegation provision. That is not the law in any Circuit.

### C.    Zhang's Reliance on California Law Is Misplaced.

Zhang cites a number of California state court cases that apply California procedural law. None of those cases is applicable here, because in enacting the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*), Congress enacted a body of substantive federal law that is applicable in both the state and federal courts. *Southland v. Keating,* 465 U.S. 1 (1984). The California legislature did not enact a body of California procedural law that is applicable in federal court.

Moreover, the Supreme Court has further held that when an agreement calls for the application of state law and the arbitration agreement calls for the application of institutional arbitration rules, the law of the selected state governs substantive issues and the institutional rules governs procedural issues. *Preston v. Ferrer*, 552 U.S. 346 (2008); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, (1995). Here, the Parties selected the substantive law of Delaware and the procedural rules of the CPR.  There is no basis for the application of California law to the pending arbitration.

---

[3] American Arbitration Association, Commercial Arbitration and Mediation Procedures, https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf (date accessed, June 10, 2021).

In any event, the California cases cited by Zhang do not support his argument. For example, Zhang cites *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096 (2018), and *Sargon Enterprises, Inc. v. Browne George Ross LLP*, 15 Cal.App.5th 749 (2017), for the proposition that a court must decide the delegation question before ordering the parties to arbitrate arbitrability. That is only logical because where there is no delegation provision, the court must decide arbitrability. Thus, the court has to decide the delegation issue prior to compelling arbitration. That is not the procedural posture of this case.  Here, there is a clear delegation, an arbitration already underway, and an arbitrator who has already issued an award on jurisdiction. In these circumstances, an injunction serves no purpose.

### D.  The Risk of Irreparable Harm and Balance of Hardships Favor Dentons.

Zhang will suffer no harm—let alone harm justifying emergency relief—if the Emergency Arbitrator issues a further award protecting Dentons' and its clients' confidential information and imposing a constructive trust on the legal fees Zhang is attempting to misappropriate. This is because Zhang will have the right to challenge that award in the proper court once the award is issued.

Zhang's alleged loss of a judicial forum cannot constitute irreparable harm for two reasons. First, if Zhang is entitled to a judicial forum, he will get one. If the Emergency Arbitrator truly lacks jurisdiction, his awards will be vacated and Zhang will be permitted to litigate. Second, parties who wish to litigate are frequently forced to arbitrate. When a District Court grants a motion to stay litigation or compel arbitration, the losing party cannot appeal until the arbitration is over. 9 U.S.C. § 3; *Monster Energy Co. v. City Beverages*, No. 5:17-CV-00295-RGK-KK, 2021 WL 650275, at *2 (C.D. Cal. Feb. 17, 2021). By contrast, when a District Court issues an anti-arbitration order, the losing party may immediately appeal and seek a stay of the litigation pending appeal.  Thus, it is not at all unusual for a party wishing to litigate to be forced to arbitrate first.

DEFENDANT'S RESPONSE TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO

In contrast, Dentons faces two harms. First, Dentons loses its ability to arbitrate. Courts have held that this is irreparable harm. *See, e.g., Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988) (noting "serious, perhaps irreparable, consequence" being denied arbitration (citation omitted)); *Reliance Nat. Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F.Supp. 385, 391 (S.D.N.Y. 1997) ("Reliance will suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its disputes with Seismic."). That is why the primary remedy for breach of an arbitration agreement is specific performance pursuant to Section 3 or 4 of the FAA.  Second, Dentons has pursued arbitration and its request for emergency relief in the arbitration because shares of stock that comprise the majority of its contingency fee award are about to be converted in a SPAC transaction. Once that SPAC transaction occurs, Dentons will have limited recourse to recover the subject shares from either the Client, which is based in the People's Republic of China, or the Client's affiliate, a Seychelles company, which has been assigned the shares.

### E.   California Labor Code Section 925 Does Not Apply.

There is no merit to Zhang's argument that California Labor Code Section 925, a statute addressing arbitration between employees and employers, applies to him.

***First***, as set forth above, California law does not apply here.  But even if the Parties had selected California law to govern this dispute, only California's substantive law would apply. The FAA would preempt any "special rules limiting the authority of the arbitrators."  *Preston*, 552 U.S. at 363 (quoting *Mastrobuono*, 514 U.S. at 63-64).  Zhang argues that the arbitration agreement and awards are invalid because the Emergency Arbitrator determined that the place of arbitration was New York in violation of the California Labor Code. CPR Rule 9.5 states that the arbitrator must fix the place of arbitration and that awards are deemed to be made at the place of arbitration.  The arbitration agreement provides that the place of

arbitration is either Chicago or New York; the Emergency Arbitrator properly sited New York as the place of arbitration. To the extent the California Labor Code purports to strip the arbitrator of that authority, that state statute is preempted.

*Preston* and *Mastruabono* are part of a long line of Supreme Court precedents finding that state law anti-arbitration legislation is preempted by the FAA. *See Perry v. Thomas*, 482 U.S. 483, 484 (1987) (holding Section 229 of the California Labor Code preempted); *Southland v. Keating*, 465 U.S. 1 (1984) (preempting California franchisee protection act when used to defeat an arbitration agreement). In *AT&T Mobility v. Concepcion*, 563 U.S. 333, 340 (2011), the Supreme Court had to decide whether a line of California precedent (known as the *Discover Bank* rule) classifying as unconscionable most collective-arbitration waivers in consumer contracts was correctly decided. The Supreme Court held that the *Discover Bank* rule "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 344. Just as the state court rule in *Conception*, Section 925 interferes with the parties' place of arbitration and gives one party to the arbitration agreement (Zhang) the unilateral right to void the agreement.

**Second**, to the extent there is a question about the applicability of Section 925, that is a question for the arbitrator to decide, as the Parties envisioned in the broadly written arbitration clause.

**Third**, even cursory consideration of Zhang's argument that he is an employee shows that it lacks merit as a factual and legal matter. Zhang relies on *Ramos v. Superior Court*, 28 Cal.App.5th 1042 (2018), which involved a salaried income partner. But Zhang was a full equity partner at Dentons. He owns a share of the business, and he is compensated by that share of the profit, not by a salary. Zhang has provided no authority to suggest that an equity partner is in an employee-employer relationship for purposes of Section 925. Defendants are not aware of any California court having ever held that a law firm equity partner is an employee.

Beyond that, Zhang's admissions undercut his claim. In Zhang's FAC, he self-

identifies as an experienced lawyer and "premier producer" at Dentons who had a multi-million dollar book of business. There is simply no way for him to plausibly argue that he is akin to the income partner at issue in *Ramos*. Zhang's reliance on *McKellar v. Mithril Capital*, 2020 U.S. Dist. LEXIS 44080 (N.D. Cal. Mar. 13, 2020), is also misplaced because the parties there did not argue that the question of whether the plaintiff was an employee was properly submitted to the arbitrator, nor did the parties address the question of FAA preemption. The Court did, however, issue an order compelling arbitration.

### F.   The Arbitrator's Emergency Award Does Not Violate Zhang's Rights.

Plaintiff's invocation of *Sargon*, which was decided under California state law that does not apply here, to claim the Emergency Award violates his rights rings hollow. There, the litigation was initiated, and then arbitration began. That is a wholly different set of circumstances than the case before this Court. In this case, the arbitration was filed first, both parties participated in the arbitration, but when Zhang felt that the proceedings began to tilt against him, Zhang initiated a lawsuit to seek a better result.

### G.   Should This Court Grant Plaintiff's TRO, Plaintiff Must Post a Bond.

Under Rule 65, "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully ... restrained." Fed. R. Civ. P. 65. "[T]he purpose of the bond is to safeguard a defendant if the Court later determines that a defendant has been wrongfully enjoined." *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178–79 (C.D. Cal. 2017)." There are tens of millions of dollars at stake, and if Zhang's request is granted, those funds may become unrecoverable. In particular, certain shares of stock to which Dentons is entitled will be converted in a pending SPAC

transaction, which may make Dentons' recovery of the shares more difficult, if not impossible. Based on the current share price of the SPAC, Dentons' contingent fee is worth more than $30 million, so a significant bond is appropriate here.

Zhang has acknowledged in his FAC that the contingency fee award is worth substantial, worth tens of millions of dollars. FAC ¶ 18. In these circumstances, should a TRO issue, Zhang should be required to post a bond equal to the current estimated amount of the contingency fee award, in an amount no less than $30 million.

## IV. CONCLUSION

Defendants respectfully requests that this Court deny Plaintiff's application for a restraining order and order to show cause why a preliminary injunction should not issue.

Dated: June 10, 2021                    KING & SPALDING LLP


                                        By:   /s/ *Joseph N. Akrotirianakis*

                                              JOSEPH N. AKROTIRIANAKIS

                                              Attorney for Defendants DENTONS US LLP, MICHAEL T. MCNAMARA, and EDWARD J. REICH